WHITING ET AL. *v.* BRYANT ET AL.

(No. 23330—Decided August 1, 1957.)

*Messrs. Van Aken, Whiting, Arnold & Nash* and *Messrs. Amerman, Burt, Shadrack, McHenry & Jones,* for Ethel Austin Whiting and others.

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. Thomas V. Koykka,* for George A. Bryant.

*Messrs. Baker, Hostetler & Patterson* and *Mr. Richard F. Stevens,* for The Cleveland Trust Company.

NICHOLS, J.   This cause is now in this Court of Appeals upon application of George A. Bryant for allowance of counsel fees and expenses to be taxed as a part of the costs in the action brought in the Court of Common Pleas of Cuyahoga County by Ethel Austin Whiting and others for the removal of George A. Bryant as one of the persons designated to vote the shares of stock of The Austin Company held by The Cleveland Trust Company, as trustee, for the benefit of plaintiffs by virtue of certain trusts created by Samuel Austin and Sarah J. Austin, both now deceased.   To such application of George A. Bryant the plaintiffs have interposed their motion to dismiss the same.   · The decree of the Common Pleas Court was in favor of the plaintiffs, and George A. Bryant was removed.   Upon appeal to the Court of Appeals upon questions of law and fact the de-

cree of this court denied the prayer of plaintiffs' petition (*Whiting* v. *Bryant,* 102 Ohio App., 508), and the Supreme Court of Ohio overruled a motion to certify the record.

By the trust instruments executed by Samuel Austin and Sarah J. Austin, The Cleveland Trust Company, as trustee, is to hold the shares of stock of The Austin Company owned by Samuel Austin and Sarah J. Austin and distribute the income therefrom in accordance with the trust instruments and with the sole right to sell such shares.

As such trustee, on its own motion, The Cleveland Trust Company was made a party defendant in the Common Pleas Court and filed its answer, whether by authority of the Probate Court or not is not now important since we are not now concerned with an application filed by it for the allowance of attorney fees and expenses incurred by it. As shown by the decree of this court, the petition of plaintiffs was dismissed, "not being supported by the proper degree of proof." No affirmative decree was made in favor of The Cleveland Trust Company, but in effect its answer was sustained by the dismissal of plaintiffs' petition.

The application of George A. Bryant, now under consideration, seeks an order of this court:

"(1) Allowing to George A. Bryant counsel fees in this matter in the sum of $31,825, and expenses in the sum of $249.72, making a total of $32,074.72.

"(2) Entering judgment against Ethel Austin Whiting, Lillian Austin Ferguson, Ida Austin Manchester, Elizabeth Shimmon De Guerre, Kathryn Shimmon Crowther, Herbert R. Whiting, Jean Whiting Addison, Margaret Whiting Funsett, Austin Kingsley Ferguson, Ruth Ferguson Rardin, Eleanor Ferguson Salter, Margery Ferguson Cooley, Winifred Manchester, Ralph Manchester, Robert Manchester, Lois Manchester Mack, plaintiffs herein, in said amount.

"(3) Ordering payment of said sum of $32,074.72, and payment also of the further sum of $563.75 (covering cost of transcript) for which judgment has already been entered by the court in its judgment of May 9, 1956, making a total of $32,638.47 to George A. Bryant by The Cleveland Trust Company, Trustee of the Samuel Austin Trust created by the Trust

Agreement dated December 22, 1930, and of the Sarah J. Austin Trust created by the Trust Agreement dated December 22, 1930, from the assets of said trusts in the hands of the trustee.''

Such application was subsequently modified to omit from the names listed in paragraph (2) against whom judgment is sought, Elizabeth Shimmon De Guerre and Kathryn Shimmon Crowther, ''they having withdrawn as parties.''

It is seen that applicant first seeks an allowance of attorney fees and expenses in the total amount of $32,074.72, presumably intending that the amount be assessed as costs and be paid by plaintiffs.

By paragraph (2) applicant seeks a *judgment* against the plaintiffs (with the exceptions stated) in the amount of $32,074.72.

By paragraph (3) applicant seeks an order for the payment of $32,638.47 to George A. Bryant by ''The Cleveland Trust Company, Trustee of the Samuel Austin Trust * * * and the Sarah J. Austin Trust * * *'from the assets of said trusts in the hands of the trustee. ''

The basis of the decision of this court upon appeal from the decision of the Common Pleas Court is shown in the opinion and findings of facts concurred in by all members of the court, reference to which may be had.

The ordinary court costs made in both the Common Pleas Court and in this court, as well as upon the motion to certify filed in the Supreme Court, have been paid by the plaintiffs in the action brought to remove Mr. Bryant. Attorney fees and expenses have not been taxed as a part of such costs. Counsel for Mr. Bryant admit that they were employed solely by him, and no claim has been made here that they were employed by or at the request of The Cleveland Trust Company as trustee, or that any authority has been granted by the Probate Court of Cuyahoga County for the employment of attorneys for Mr. Bryant, that being the court wherein the trusts are being administered.

Some claim is now made here by counsel for Mr. Bryant that in its decree this court indicated that attorney fees and expenses would be included as part of the costs upon final determination of the litigation. The voluntary statement of the court

was that "the parties may submit their claims, if any, to this court for such allowable counsel fees and expenses as may be reasonable, equitable and proper under the circumstances." But this court certainly was not deciding in advance that any motion thereafter filed would be considered favorably.

Indeed, there is considerable doubt as to any authority of this court to tax attorney fees and expenses as a part of the costs, especially attorney fees in courts other than the Court of Appeals, but since Mr. Bryant and his attorneys have invoked action of this court in that regard and are thereby estopped to complain of the disposition made of the application, we have and do proceed to determine whether upon all the circumstances connected with this litigation it would be fair, just and equitable to award attorney fees and expenses of counsel employed by Mr. Bryant, as sought in the application therefor. Any authority for such award must be found in Section 2323.44, Revised Code, or from established principles prevailing in courts of chancery.

No fund has been brought into court because of the services of Mr. Bryant's attorneys. Courts of chancery have at times found it just, fair and equitable to order payment of attorney fees out of such fund, but that is not possible in this case.

Counsel for Mr. Bryant urge that the decision of this court establishes that his actions as a member of the voting committee have conferred a benefit upon the beneficiaries of the trust since this court held that he violated no duty under the provisions of the trust instruments when he voted for the best interests of The Austin Company and thereby enhanced the value and income from the stock held by The Cleveland Trust Company, Trustee, for such beneficiaries, due to the efficient management of Mr. Bryant. One member of this court apparently agrees with that argument, as indicated in the dissenting opinion of Judge Skeel. The writer of this opinion disclaims any intention that the findings and decision on the merits of the appeal be so interpreted, holding definitely to the contrary and that the evidence presented on appeal conclusively shows that Mr. Bryant never had any intention to benefit such beneficiaries and that any enhanced value of or increased income from the trust shares was incidental and insignificant to the great per-

sonal benefit and advantage procured by Mr. Bryant and his wife by reason of his selfishly devised plans and actions (authorized as they were by the strict terms of the trust instruments but with disadvantages to the children of the settlors which never could have been contemplated), whereby Mr. Bryant has acquired complete control of The Austin Company and enriched himself an hundredfold more than he has incidentally benefited plaintiffs. Indeed, had it not been for the regard of The Cleveland Trust Company, Trustee, in furtherance of its duty to protect the interests of the plaintiffs, Mr. Bryant would have sacrificed all interests of the plaintiffs in The Austin Company when he proposed that the trustee sell to that corporation all the shares of stock held in trust at a price wholly inadequate and much less than the value he attributed to the shares held by his wife.

Mr. Bryant was at all times concerned only in voting the shares of stock of The Austin Company for his own enrichment and he has certainly been well paid without further seeking to impose upon plaintiffs the burden of paying for the services of attorneys procured by him for the purpose of establishing his power under the trust instruments, a power which has in no instance been availed of for the benefit of the children of Samuel Austin and Sarah J. Austin. We say ''power'' as distinguished from just and equitable consideration of the welfare of plaintiffs, members of the settlors' family.

Judge Thomas, of the Common Pleas Court, evidently arrived at the same conclusions in ordering the removal of Mr. Bryant as a member of the voting committee. Two members of this court would not have concurred in the decree refusing the prayer of plaintiffs' petition on any ground that Mr. Bryant had exhibited any concern for these beneficiaries, reference being now made to pertinent statements in the findings of facts made by this court, as follows:

Paragraph 12: ''All of the activities of George A. Bryant have been prosecuted in the best interests of The Austin Company * * *.''

It is true that the selfish efforts of Mr. Bryant indirectly produced incidental benefits to the beneficiaries, but only because he failed in his efforts to eliminate them by sale of the

trust shares to The Austin Company. In his proposal to The Cleveland Trust Company, Trustee, he disclosed his purpose to issue 25,000 to 35,000 additional shares of The Austin Company (a 25 to 35 per cent increase in outstanding shares) which were to be issued to "employees, managers and officers," of that company and thus deny the issuance of any such shares to these beneficiaries, thereby plainly disclosing that no purpose of his was to benefit the children of Mr. and Mrs. Austin, but that his purpose was to enable him as an officer and largest stockholder of the corporation to receive personally the major portion of such increased shares. This was so particularly shown when he and his lawyers fought desperately to prevent the introduction in evidence of his written proposal to the trustee.

What Mr. Bryant did pursuant to his determination to benefit himself to the disadvantage of the beneficiaries is shown in paragraph 20 of the findings of facts:

"On April 24, 1946, Mr. Bryant revealed to the trustee (a) that he was working on a plan to get more stock in the hands of key men" (evidently considering himself a key man); "he commented that there were about eight engineering companies now in the engineering business which were started by former Austin employees and that (b) he is quite strongly of the opinion that all the stock should be owned by the active men in the Company; and (c) that quite a few management shareholders had recently 'raised questions about the right of the Austin family, meaning the W. J. Austin family, to pass on their stock at death with no commensurate right in the employees.' "

The intent of Mr. Bryant to deprive the members of the Austin family of valuable rights, privileges and benefits could have been expressed in no more meaningful language, especially in the light of the fact that Mr. Austin, the founder of the business, had provided that stock issued to employees under his incentive plan could not pass on at death and there was no such restriction as to the stock held in trust for the members of his family. One would be blind indeed if he failed to see the incentive for the benefit of Mr. Bryant when and if increased amount of stock would be issued to "employees and managers" without restriction preventing them to pass on their stock at

death. Without restrictions such employees and managers could at any time sell the stock and join some competing company, or organize a new company of their own, and thus destroy the incentive plan inaugurated for the benefit of The Austin Company.

On November 20, 1947, the trustee having declined to grant the proposal of Mr. Bryant to sell the trust shares to The Austin Company, what is called "Formula, G" was presented to the Board of Directors of The Austin Company by Mr. Bryant and eight other members of management (there being none included who represented the interests of the Austin family), and they also presented to the board a "Plan to Provide Additional Shares of Common Stock for Distribution and Sale to Present and Future Employees of The Austin Company." The principal features of the plan were (a) the securing of options over all stock held by nonemployee shareholders (the Austin family); (b.) the purchase of a substantial number of shares from nonemployee holders; (c) the authorization of additional common shares *for issue to employees*; and (d) the amendment of repurchase options on employee stock to permit the "transfer of such shares to their wives or immediate members of their families to be held as if not transferred." The board adopted "Formula G," and each director, including Mr. Bryant, expressed himself as being favorable to the proposed plan generally and to more stock being made available to the younger deserving men in the company and "also to making any stock offering open to participation *by officers and directors*." The resourcefulness of Mr. Bryant to diminish the interest of the members of the Austin family in The Austin Company could not more plainly be demonstrated, and all to the advantage of Mr. Bryant.

Paragraph 23 of the findings of facts: "At the annual meeting of Austin Company shareholders held on January 13, 1948, Mr. Bryant, as chairman of the meeting, called for a motion approving the acts and proceedings of the directors since the previous meeting on January 14, 1947. Upon submission of such resolution, Mr. Bryant, *as a member of the voting committee,* declined to join with the other members (of the voting committee) in voting the shares against the resolution and voted his

own shares, plus those for which he was proxy, in favor of the resolution.''

Paragraph 24 of the findings of facts: ''On February 12 and 13, 1948, the trust beneficiaries notified Mr. Bryant, as President of The Austin Company, (a) that they objected to the proposed authorization and issue of additional company stock without full preemptive rights to the Austin trusts; and (b) that there were other matters which they felt merited further study from a stockholder's point of view and, perhaps, some discussion with the officers of the company.''

Paragraph 25 of the findings of facts: ''On February 24, 1948, Mr. Bryant, as President of The Austin Company, formulated and formalized a 'Tentative Plan and Procedure for Purchase of All Austin Company Common Stock and All Austin Company Preferred Stock now Held By The Cleveland Trust Co. —For the Samuel and Sarah J. Austin Estates.' This plan not only contemplated the acquisition of the trust shares, but also shares of other nonproductive stockholders plus purchase options over all or substantially all of the then outstanding unoptioned common stock. The plan was formulated, according to its preamble, because 'recent developments have convinced us that this plan for the purchase of these shares is in the best interests of The Austin Company and of its shareholders.' Pursuant to the plan, Mr. Bryant subsequently submitted to the trustee an offer to purchase 'all or none' of the trust shares at prices to be determined by Formula G for the common and at the call price ($105) for the $100 par value 7 per cent preferred, together with various documents and data calculated to induce the trustee to accept the offer. This offer was not acted upon by the trustee and therefore came to naught.''

This offer was apparently an effort on the part of Mr. Bryant to induce the trustee to sell the trust shares pursuant to the plan revealed to the trustee by Mr. Bryant on April 24, 1946, and further demonstrates the determination of Mr. Bryant to deprive the beneficiaries of substantial rights secured to them.

But that was not all of the machinations of Mr. Bryant *against* and *not for* the benefit of the family of the settlors of these trusts, plaintiffs in this action.

Paragraph 26 of the findings of facts: ''Prior to the annual

meeting of Austin Company shareholders held on January 11, 1949, due notice of intention to cumulate votes for the election of directors was served upon The Austin Company by the trustee. During the meeting Mr. Bryant called for a reduction in the size of the board of directors *so as to prevent the election of a director by the Austin trusts.* A resolution was submitted to that effect, whereupon Mr. Bryant disagreed with his co-member, Mr. Whiting, as to the voting of the trust shares on the resolution. Such shares were then voted by Mr. Whiting and the trustee against the adoption of the resolution. Mr. Bryant voted his own shares and all management shares, for which he held proxies, in favor of the resolution, which was duly passed. The trustee and Mr. Whiting subsequently nominated Austin Kingsley Ferguson (a grandson of the settlors) for election as a director, whereupon Mr. Bryant disagreed with Mr. Whiting as to the voting of the trust shares which were then voted by Mr. Whiting and the trustee in favor of Mr. Ferguson's election. Mr. Bryant voted his own shares and all management shares, for which he held proxies, in favor of the election of 6 company managers as directors. Mr. Bryant's action in this respect, and in causing a reduction in the size of the board of directors, was in furtherance of management policy to restrict board membership to persons active in the Company.''

But his action cannot be said to be otherwise than against the interests of the trusts and the beneficiaries thereof, the plaintiffs in this action, and in furtherance of his own selfish intentions.

Whatever this court has said with reference to the actions of Mr. Bryant being in good faith and in the best interests of the trusts and the beneficiaries thereof was said solely because of the *power* vested in him by the trust instruments, and was said in contradistinction of his acts being in good faith upon equitable principles in the interest of the beneficiaries of the trusts, the *Austin family,* plaintiffs herein, who brought the action in good faith and upon just grounds. The word ''abortive'' used in one of the findings of facts was a mere figure of speech, a supposition unsupported by the evidence.

We cannot entirely eradicate the feeling that perhaps this court in its decision on appeal gave a strict legal interpretation,

rather than a warranted equitable understanding, of the provisions of the trust instruments involved. It is scarcely conceivable that Samuel Austin and Sarah J. Austin ever contemplated that one of the recipients of the voting powers provided for would so abuse the same as to govern his actions for his personal enrichment, as has been done here to the point of in great measure eliminating their offspring from any interest in the enterprise Samuel Austin had given his life to founding. Upon more deliberate consideration, especially in the light of this latest attempt to burden these beneficiaries with the payment of more than $32,000 of fees for attorneys employed by Mr. Bryant to enable him to further extend his powers, we are inclined to feel that the decision of Judge Thomas in the Common Pleas Court more nearly conformed to equitable principles and justice. Serious thought may yet be given to ordering, *sua sponte*, a reconsideration (not a rehearing) of the appeal to this court, which is yet possible since the Supreme Court refused certification.

The conclusion of Judges Hurd and Nichols is that the application to tax attorney fees as a part of the costs in this case be denied; that the allowance of such attorney fees would be manifestly unfair to the beneficiaries and unjust and inequitable; that the court deny judgment against the beneficiaries for fees and expenses of the attorneys employed by Mr. Bryant; that Mr. Bryant and his attorneys be found not entitled to the payment of such fees and expenses out of the trust funds in the control of The Cleveland Trust Company as trustee; that a mandate issue out of this court commanding The Cleveland Trust Company as such trustee to deny payment of such attorney fees and expenses, and a like mandate issue commanding the Probate Court of Cuyahoga County to disallow any and every claim which may be presented for the payment of such attorney fees and expenses out of the trust funds being administered by The Cleveland Trust Company as trustee for the benefit of the plaintiffs herein, or any successor of such trustee; and that this court make no order requiring The Austin Company to pay to Mr. Bryant, or to his attorneys, fees and expenses of his said attorneys, the majority members of this court being content to leave to the board of directors and stockholders of The Austin Company to determine whether the attorneys employed by Mr. Bryant

in this action have performed services resulting in benefit to that company, this court having received no evidence of the value of any such services and finding no necessity to receive any evidence in that regard. We are, however, constrained to say that in our judgment payment of attorney fees and expenses out of the assets of The Austin Company, in such amount as will compensate for any benefit to that company, would equitably distribute the burdens of such fees and expenses.

*Judgment accordingly.*

HURD, J., concurs in the conclusion and the judgment of the foregoing opinion of Nichols, J. Without concurring in all the statements contained in the foregoing opinion of Nichols, J., I join in the conclusion contained in the opinion of Nichols, J., and the judgment that the application of George A. Bryant, appellant, for allowance of counsel fees and expenses to be taxed as part of the costs in the action brought in the Court of Common Pleas of Cuyahoga County, and here appealed on questions of law and fact, should be denied, and that said application should be dismissed at his costs.

While it is true that a court of equity, for good cause shown, may apportion or assess attorney fees as may appear just and equitable, such apportionment or allowance rests within the sound discretion of the court and cannot be demanded as a matter of right. In the instant case, upon consideration of the entire record, I find no cause in equity or justice to assess the fees against the beneficiaries of the trust. It is my view that insofar as attorney fees are concerned, the parties involved should be left where we find them, that is, that each should bear the burden and expense of their own attorney fees and expenses in such a manner as they deem best. We have no jurisdiction to require The Austin Company to bear the expenses or attorney fees of George A. Bryant, that being a matter strictly resting between Mr. Bryant and The Austin Company.

SKEEL, P. J., dissenting. I dissent from the decision of the majority that George A. Bryant, as a member of the voting committee appointed under the terms and by the authority of the.

provisions of the trust agreements of the Austin Trusts, is not entitled to expenses, including attorney fees, created and caused by the action of the trust beneficiaries, here designated as plaintiffs, in attempting to procure a court order to remove him as a member of the voting committee because of alleged conflicts of interests. In the principal case (*Whiting* v. *Bryant,* 102 Ohio App., 508) this court held that Mr. Bryant, having been appointed under the authority of the trust agreement and in the manner therein provided, his appointment being clearly within the purpose and spirit of the settlors' intention to see to it that the trust stock be voted by members of management, should not be removed as prayed for by plaintiffs. Mr. Bryant was clearly entitled, as designated in the trust agreement, to act as a member of the voting committee to vote the shares of stock of The Austin Company held in the trusts after his appointment to that committee.

It seems to be the claim of the plaintiff beneficiaries that:

1. Mr. Bryant's appointment was made in the interests of and as the representative of The Austin Company as a member of the voting committee of the trusts.

2. The best interests of the company can be separated from and are in some respects antagonistic to the best interests of the trusts.

Neither of these claims can be supported.

The claim that the services of Mr. Bryant, as a member of the voting committee, were not rendered for the trust but as a representative of The Austin Company, is without any basis of fact or law. Nor does the decision of this court, denying the prayer of plaintiffs' petition seeking Bryant's removal from the voting committee because of conflict of interests, support such claim. The claim that he could not vote the stock in the best interests of the trust because of his participation in management indicates clearly that when the petition was filed there was no claim, as here, that the income of the trust res was put in trust for the beneficiaries and the voting power of the stock in trust for the company. One who exercises the voting rights of a stock acts for the owner. Here the trust is the owner. Mr. Bryant's appointment was, by the instrument creating the trust and was intended by the settlors to be, a part and parcel of the manage-

ment of the assets of the trust. Some of the beneficiaries, herein designated as plaintiffs, are here objecting to charging the trust with expenses created by them as a necessary result of their effort to remove one appointed to the voting committee under and by authority of the trust agreement, such expenses being created in preserving the integrity of the trust instrument against such action instituted by them. They should not now, under the circumstances of the case, succeed in such objection.

NICHOLS, J., of the Seventh Appellate District, sitting by designation in the Eighth Appellate District.