*995 OPINION OF THE COURT
C. Raymond Radican, J.
In this proceeding for judicial settlement of the trustee’s accounts, the successor trustee requests partial summary judgment dismissing various enumerated objections filed by Peter McDaniel who cross-moves for the same relief allowing objections Nos. 1 through 3.
The trust created under the will of decedent provided for the payment of income to her son, H. M. Allister, and the distribution to him of the trust principal in three equal installments when he reached the age of 30, 35 and 40. In the event the beneficiary failed to attain 40 years of age the will directed that the trust be terminated and the corpus be paid to three designated charities.
The beneficiary died May 9, 1985 at the age of 35. The nominated trustee died a year earlier and was succeeded by the first successor trustee. He too predeceased the beneficiary, and his widow, Joan S. Krosner, the second successor trustee, has filed the subject matter accounting. There has been no judicial accounting filed by the executor or his substitute fiduciary.
Peter McDaniel has filed objections to the trustee’s account in his capacity as a successor executor under the will of decedent’s son which was probated in San Francisco, California.
At the time of her death in 1969, decedent was the owner of a commercial parcel of real estate located on Sunrise Highway in Freeport which was rented out as a coffee shop known as the White House Restaurant. She was also a 50% shareholder in a corporation known as South Shore Realty Corp. which owned real property in Bellmore, New York, that was leased for use as an A & P Supermarket.
The accountant places a value of $28,470.74 on decedent’s stockholder’s interest in South Shore, and values the Freeport property at $25,000. Other assets of the trust, consisting of cash, securities and jewelry were valued at $81,246.55. The trust was funded with these assets having a total value of $134,717.29 on January 1, 1974, and the period covered by the account runs from that date to October 31, 1988.
The stock in South Shore was retained by the trust until March 10, 1982 when it was sold at a loss of $7,824.67. During this eight-year period the corporation experienced annual net *996 operating losses that were charged against income. The result was that the beneficiary was paid little or no income.
The Freeport property was rented for the first eight months of 1974, and thereafter remained vacant for 10 years until sold on August 16, 1984 at a loss of $2,643.17.
Objection No. 1 alleges the sale of decedent’s stock interest in South Shore — which resulted in a $7,800+ loss — was not made at its fair market value, and objects to the trustee’s retention of this underproductive asset for eight years as well as the failure to credit income with a portion of the proceeds of sale pursuant to EPTL 11-2.1 (k) (l)-(3). No. 2 makes the same charge with respect to the retention and sale of the Freeport property.
Objection No. 4 claims the value assigned to the shares of South Shore did not represent its true worth at the time of distribution to the trust on January 1, 1974. No. 5 makes the same complaint regarding the Freeport property.
The issue of whether the values assigned to the stock and the property in Freeport at the time of their transfer to the trust represented the fair market value of these assets, and the issue of whether the price obtained on the subsequent sale of those assets represented fair market value present questions of fact. Ascertainment of value of property or an article rests upon the opinion expressed by the witness, whether he be an expert or otherwise (Richardson, Evidence § 364 [n] [Prince 10th ed 1973]). However, the weight and inferences to be drawn from the testimony of such witness presents a question for the trier of fact (Commercial Cas. Ins. Co. v Roman, 269 NY 451, 456-457) which precludes an award of summary judgment.
The remainder of objections Nos. 1 and 2, which protest the failure to credit income with part of the proceeds realized from a sale of the stock and the property in Freeport, requires an examination into the applicability of the rules governing the allocation of receipts and expenditures of a trust between principal and income set forth in EPTL 11-2.1 (k) (1), (2). Initially, it is noted that the amendment of subdivision (k) of EPTL 11-2.1 by Laws of 1987 (ch 495) is made applicable to this trust by section 2 of such enactment which provides: "This act shall take effect immediately [July 30, 1987] and shall apply to proceeds received during any period as to which the fiduciary’s account has not been settled prior to such effective date, whether the proceeds were received prior to or *997 after such effective date by any trust * * * established before, on or after the effective date hereof.”
EPTL 11-2.1 (k) (1) provides a portion of the net proceeds of a sale of any principal property of a trust held for more than a year which has not produced over the period held on average net income of 1% per annum of its inventory value shall be allocated to income as delayed income. The net proceeds are defined as the gross received, less the expenses of sale including any capital gain tax and less any carrying charges and expenses paid from the trust while the property was held and was underproductive.
The statute excepts from its purview securities listed on a national securities exchange or traded in over the counter, and as amended, provides it shall have no application if the terms of the governing instrument direct otherwise (EPTL 11-2.1 [k] [5]).
The long period of retention of the stock while operating losses were incurred by the corporation and the retention of the Freeport property without being tenanted for 10 years quite dramatically establish the unproductive nature of these assets. However, the decedent’s will (article sixth [para 2]) empowers her trustee "2. To retain and hold * * * in the principal of any trust * * * any property constituting a part of my Estate at my death for such period of time as to him in his uncontrolled discretion shall seem best, without liability for any decrease in value thereof during the period of such retention.”
Paragraph 3 of article sixth further authorizes decedent’s trustee: "3. to invest and reinvest the principal * * * of any trust * * * in any real or personal property * * * whether or not wasting assets, as he may determine irrespective of whether the sáme may be authorized by the laws of the State of New York * * * as investments for fiduciaries and without the duty to diversify and without any restrictions placed upon fiduciaries by any present or future applicable law, rule or court or court decision.”
The question is "Are the quoted clauses a direction by the testatrix exempting her trustees from the application of EPTL 11-2.1 (k)?” The statute states: "A provision in a will * * * authorizing the fiduciary (A) to retain or to invest in property that is unproductive or underproductive of income (described in the instrument by the words 'unproductive’ or 'underproductive’ or words of similar import), or to retain or to invest *998 in property * * * without regard to whether it is productive of income * * * shall be deemed to be a direction that * * * paragraph (k) shall not apply” (EPTL 11-2.1 [k] [5]).
In the opinion of the court the provision of the will authorizing the retention of assets by the trustee in his uncontrolled discretion without liability for any decrease in value is offensive to public policy as an attempt to exonerate the fiduciary from the duty of exercising reasonable care and prudence. The immunization conferred by this clause contravenes the spirit and purpose of EPTL 11-1.7 (Matter of Ascher, 175 Misc 943) and the provision exculpating the fiduciary from loss caused by his negligent conduct is void (EPTL 11-1.7 [a] [1]).
The court similarly finds that the provisions of paragraph 3 of article sixth in part violate EPTL 11-1.7. This clause attempts to relieve the fiduciary of all restrictions placed on him under present or future laws or decisions of the court, and in so doing likewise runs afoul of EPTL 11-1.7 (cf., Matter of Schechter, 35 Misc 2d 371). To the extent the clause would elevate the fiduciary above the law, the provision is void. Neither clause, moreover, makes reference, directly or indirectly, to the retention or investment in property that is unproductive or underproductive and hence, does not constitute a direction from the testratrix that the provisions of EPTL 11-2.1 (k) shall be not applied.
Since neither of these assets are excludible from the application of EPTL 11-2.1 (k) and there being no doubt that the retained assets meet the criteria of unproductive or underproductive property, the óbjectant is entitled to partial summary judgment with respect to items Nos. 1 and 2 directing that a portion of the proceeds from each sale be allocated to the income account in accordance with the provisions of EPTL 11-2.1 (k) (l)-(3).
The objection addressed to the propriety of the trustee’s retention of these assets raises the question of whether the conduct of the trustee was consonant with the exercise of reasonable care, diligence and prudence required of fiduciaries. The answer to that inquiry ordinarily presents issues of fact that are reserved for the trial. The situation here is no different.
Petitioner trustee’s motion for summary judgment is denied. *999 Respondent’s cross motion for summary judgment is also denied except with respect to those parts of objections Nos. 1 and 2 requesting the proceeds received from the sale of the stock of South Shore and the Freeport property be partially allocated to income pursuant to EPTL 11-2.1 (k).