### Katherine Tatiana MARSHALL, Appellant,

v.

### FIRST NATIONAL BANK ALASKA, Appellee.

No. S–10989.

Supreme Court of Alaska.

Sept. 3, 2004.

Tonja Woelber, Tonja Woelber, Attorney at Law, P.C., Anchorage, for Appellant.

John R. Beard, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

We consider here a trust beneficiary's claim that the superior court should have ordered the former trustee to repay fees it charged the trust for unsuccessfully opposing the beneficiary's request for a change in trustee. Per AS 13.36.055, an "interested person" may dispute the "reasonableness" of a trustee's compensation and seek recovery of "excessive compensation" paid by the trust. Because the superior court's apparent reasons for denying the repayment petition were legally erroneous, we remand for determination of whether the compensation was reasonable or excessive.

## II. FACTS AND PROCEEDINGS

Katherine Tatiana Marshall, born in 1976, lives in Longmont, Colorado. She is the sole beneficiary of a trust her grandparents created in Alaska in 1984; the trust named First National Bank of Anchorage, now First National Bank Alaska (First National), as trustee. Marshall's grandfather had worked for First National for many years. The trust's stated primary purpose is providing for Marshall's postsecondary education and making periodic distributions to her. The trustors both died in 1997, and Marshall moved from Alaska to Colorado in 1999.

In October 2001 Marshall asked First National to resign as trustee in favor of Morgan Stanley Dean Witter Trust (Morgan Stanley), but First National refused. After fruitless negotiations, Marshall on November 20, 2001 "served" on John Beard, a lawyer whom First National had not then authorized to accept service, a proposed petition for substitution of corporate trustee under authority of AS 13.36.090; the proposed petition would ask the superior court to substitute Morgan Stanley for First National. More unsuccessful negotiations followed. On December 5 Beard, for First National, acknowledged that service was effective and asked that he be notified when Marshall filed the petition so that First National would know when it needed to respond. Marshall filed the petition with the court the next day, December 6.

She first notified First National of the filing on December 11. In the meantime, on December 7, Standing Probate Master John E. Duggan recommended approving the substitution order lodged with Marshall's seemingly unopposed petition. The superior court signed the order three days later, on December 10. First National received the executed order on December 17. It promptly moved for relief under Alaska Civil Rule 60(b), but the probate master recommended that relief be denied. First National objected to his recommendation. Marshall opposed First National's Rule 60(b) motion, claiming that it had been due December 10. She argued that granting it would cause First National to assess more fees against her trust, because, she stated, the bank had already spent eight to ten hours considering the petition and would charge her trust for its work. The superior court disapproved the probate master's recommendation and granted the trustee's Rule 60(b) motion, citing the lack of service and insufficient notice that the petition had been filed.

The probate master held a hearing on Marshall's petition to substitute and reported his findings and recommendations to the court in April 2002. He recommended that Morgan Stanley be substituted as trustee because AS 13.36.090 directs that an adult beneficiary's views should be given weight in determining the suitability of the trustee and the place of administration, and Marshall wanted the trust administered from a place closer to her residence. He noted that AS 13.36.090 provides that a trustee should efficiently administer the trust at a place appropriate to the trust's purpose. Neither side objected, and the court accepted the recommendation and signed Marshall's proposed order substituting the corporate trustee. On May 9, with the parties' agreement, the court entered a somewhat different substitution order. The differences are immaterial to this appeal.

Morgan Stanley requested revisions to the May 9 order, and on July 18 Marshall sought a corrected order appointing the substitute trustee. She stated that correction was necessary partly because the legal name of the substitute trustee is Morgan Stanley Trust,

whose corporate situs is Jersey City, New Jersey. She stated that her contact person for trust matters would continue to be her financial advisor in Boulder, Colorado. First National opposed the July 18 request, and moved for vacation of the May 9 substitution order. It argued that because the national office of Morgan Stanley's trust department was in New Jersey, convenience of administration was no basis for changing the trustee to Morgan Stanley.

On September 17 the probate master recommended approval of Marshall's proposed corrected order substituting corporate trustee; the court entered the proposed order the next day. In October First National transferred the trust funds to Morgan Stanley and sent Morgan Stanley and Marshall its final accounting.

Marshall filed a petition in January 2003 asking the court to order First National to pay the trust $15,697.18, the amount First National had charged the trust from November 2001 through October 2002 for attorney's fees and special trustee fees in connection with the substitution petition. First National had charged the trust $1,504 for special trustee fees and $9,905.68 for attorney's fees for the services performed before entry of the May 9, 2002 substitution order. It had charged the trust an additional $4,287.50 for fees incurred after May 9.

The probate master recommended denying Marshall's request to "surcharge" First National.[1] Although the superior court apparently intended to follow that recommendation, on January 31, 2003 it signed the surcharge order Marshall had submitted with her surcharge petition. The court clarified its intention on February 3 and denied Marshall's surcharge petition.

After Marshall asked for findings and conclusions to explain the February 3 denial order, the probate master issued findings and conclusions on March 10, stating:

> The Probate court recommended denial of the surcharge petition finding that there is no statutory provision or court rule expressly authorizing such a surcharge, that First National Bank did not act in bad faith in its opposition to the original petition and to award such a surcharge would set a bad precedent and likely have a chilling and coercive effect on other similarly situated trustees that might have a disagreement with a trust beneficiary.

So far as we can determine from the record, the superior court did not expressly approve or adopt the probate master's March 10 findings and conclusions.

Marshall appeals from the February 3 order denying her surcharge petition.

## III. DISCUSSION

### A. Standard of Review

We here review a decision denying a statutory repayment request. We apply our independent judgment when reviewing a court's interpretation of statutes and other rulings on legal questions.[2] "When construing the meaning of a statute under this standard, we 'look to the meaning of the language, the legislative history, and the purpose of the statute' "[3] and " 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[4] We review fact findings under the clearly erroneous standard; a finding is clearly erroneous if it leaves us with a " 'definite and firm conviction on the entire record that a mistake has been made.' "[5] It appears, however,

---

1. "Surcharge" is used by the parties to describe the repayment relief Marshall sought. We will use the term in this opinion because the parties have used it. *Cf.* AS 13.16.485(d) (providing that "[i]ssues of liability between the estate and personal representative individually may be determined in a proceeding for accounting, surcharge, or indemnification or other appropriate proceeding").

2. *Cook Inlet Keeper v. State,* 46 P.3d 957, 961 (Alaska 2002); *Fancyboy v. Alaska Vill. Elec. Co-op., Inc.,* 984 P.2d 1128, 1132 (Alaska 1999).

3. *Enders v. Parker,* 66 P.3d 11, 13–14 (Alaska 2003) (quoting *Fancyboy,* 984 P.2d at 1132).

4. *Id.* at 14 (quoting *Fancyboy,* 984 P.2d at 1132).

5. *Dunn v. Dunn,* 952 P.2d 268, 270 (Alaska 1998) (quoting *R.F. v. S.S.,* 928 P.2d 1194, 1196 n. 2 (Alaska 1996)).

that both the court's denial order and the probate master's findings of fact and conclusions of law explaining why he recommended denial turn on legal rulings, not fact findings.

## B. First National's Procedural Arguments

We first consider several threshold procedural arguments that First National advances for upholding the order denying the surcharge petition. We can affirm a judgment on alternative grounds not relied on by the superior court.[6] Marshall contends that First National's procedural arguments are barred either because First National raises them for the first time on appeal, or because they are without merit. As we will see, the denial of the surcharge petition cannot be sustained for any of the procedural reasons First National advances.

### 1. Jurisdiction

The Uniform Probate Code (UPC), which Alaska has adopted as AS 13.06–13.36, gives the court jurisdiction over trust proceedings.[7] First National argues that Marshall unsuccessfully invoked this jurisdiction when she filed her petition for surcharge. It first contends that, because she gave no notice to First National or Morgan Stanley, as AS 13.06.110 requires, when she filed the surcharge petition, she failed to initiate a trust proceeding. It next argues that the

court lacked jurisdiction, because the trust was not registered in Alaska, had no assets in Alaska, and was no longer being administered here.

Even though First National did not raise these arguments before, we consider them for two reasons. First, "questions of subject matter jurisdiction or plain error can be raised de novo before this court."[8] First National in part argues that the court did not have subject matter jurisdiction of the surcharge dispute. Second, we can "consider in defense of a judgment below any matter appearing in the record, even if not passed upon by the lower court."[9]

We are nonetheless unpersuaded by First National's jurisdictional arguments. Alaska Statute 13.36.055 authorized Marshall to file the surcharge petition.[10] She served the surcharge petition, as AS 13.06.110(a) requires, on First National's attorney, Beard. He had represented First National in the substitution litigation. Service of the surcharge petition on him was service on First National. Marshall served no hearing notice, but because no hearing was then scheduled, the lack of a hearing notice would not have required dismissal of the petition. Marshall did not serve the petition on Morgan Stanley. She should have.[11] But Morgan Stanley was her fiduciary, and its interest was presumptively the same as hers as to the surcharge dispute. First National has not explained

---

6. *State v. Pete*, 420 P.2d 338, 341 (Alaska 1966).

7. AS 13.36.035(a) states:
 The court has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts.... [P]roceedings that may be maintained under this section are those concerning the administration and distributions of trusts, the declaration of rights, and the determination of other matters involving trustees and beneficiaries of trusts. These include proceedings to ... review trustees' fees and to review and settle interim or final accounts.

8. *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 870 (Alaska 1992); *see also Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 275 F.Supp.2d 398, 403 n. 5 (S.D.N.Y.2003) ("Because the instant motion challenges the Court's subject matter jurisdiction, ATI's argument that the motion is untimely under Rule 12(g) is misguided. An objection to subject mat-

ter jurisdiction is *always* timely." (Original emphasis.)).

9. *Pete*, 420 P.2d at 341.

10. AS 13.36.055 provides:
 On petition of an interested person, after notice to all interested persons, the court may review the propriety of employment of any person by a trustee including any attorney, auditor, investment advisor or other specialized agent or assistant, and the reasonableness of the compensation of any person so employed, and the reasonableness of the compensation determined by the trustee for the trustee's services. Any person who has received excessive compensation from a trust may be ordered to make appropriate refunds.
 *See infra* Part III.B.3.

11. AS 13.06.110(a).

how it was harmed by this failure or why Morgan Stanley was an essential participant. It also fails to explain how this procedural failure gives rise to a jurisdictional defect. If First National had objected below, Marshall could have promptly corrected the service failure.

First National may assume that superior court jurisdiction required that Marshall commence a new proceeding. She filed the surcharge petition in the same superior court proceeding in which the substitution issue had been litigated. First National cites no authority that precluded Marshall from filing the petition in the existing case, however. Certainly that was far more efficient than commencing a new proceeding.

The surcharge petition was also timely. First National apparently sent Marshall its final accounting in October 2002, and Marshall filed the petition on January 17, 2003, within six months of the final account, as AS 13.36.100 requires.[12]

■ First National seems to imply that it is significant that the new trustee is in a different state. That circumstance is irrelevant here. The surcharge petition was directed at First National. It is possible that the beneficiary (and the trust, acting through the successor trustee) could not have obtained jurisdiction over First National in any court outside Alaska. Depriving Alaska courts of jurisdiction under these circumstances might allow the former trustee to avoid a claim for repayment.

■ In anticipation of equivalent jurisdictional issues, AS 13.36.045(a)(2) provides that "[t]he court will not, over the objection of a party, entertain proceedings under AS 13.36.035 involving a trust registered or hav-ing its principal place of administration in another state, unless ... the interests of justice otherwise would seriously be impaired." That provision does not apply here, because at all pertinent times (before the final accounting and final substitution order) the trust was situated and administered in Alaska and the former trustee's disputed services were performed here. That the savings clause of subsection .045(a)(2) potentially extends Alaska jurisdiction to foreign trusts does, however, implicitly confirm that Alaska courts must have jurisdiction to consider a surcharge petition directed at an Alaska trust's former trustee which is still domiciled in Alaska.

### 2. Res judicata

■ First National also contends that res judicata bars Marshall's surcharge claim as to those charges, totaling $11,409.68, incurred and billed before entry on September 18, 2002 of the final order substituting trustees. First National notes that although Marshall had complained that First National's services were abusive or inefficient, she did not otherwise object to those charges before entry of the September 18 order. First National's theory is that the September 18 order was a final judgment that prevents relitigation of the charges previously paid and approved.

We assume that res judicata could apply to claims that a trustee received excessive compensation. We stated in *DeNardo v. State* that "res judicata precludes relitigation by the same parties, not only of claims raised in the first proceeding, but also of those relevant claims that could have been raised."[13]

---

12. AS 13.36.100 states:
 Limitations on proceedings against trustees after final account. Unless previously barred by adjudication, consent or limitation, any claim against a trustee for breach of trust is barred as to any beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the claim is commenced within six months after receipt of the final account or statement. In any event and notwithstanding lack of full disclosure, a trustee who has issued a final account or state-ment received by the beneficiary and has informed the beneficiary of the location and availability of records for examination by the beneficiary is protected after three years. A beneficiary is considered to have received a final account or statement if, being an adult, it is received by the beneficiary personally or if, being a minor or disabled person, it is received by a representative as described in AS 13.06.120(1) and (2).

13. *DeNardo v. State*, 740 P.2d 453, 456 (Alaska 1987).

But we are unconvinced by First National's contention that the claim is barred either because the fees issue was actually litigated, or because it could have been litigated.

The propriety of the interim charges was not litigated or adjudicated during the substitution dispute. The issue in that dispute was whether First National could be removed as trustee, not who should pay for the cost of its opposition. The efficiency of administration, and the fact First National was charging the trust for its opposition to the substitution petition, were raised as additional reasons for substitution. But we agree with Marshall's contention that she made it clear in the superior court that "she did not consider the propriety of the trustee's fees to be an issue in the substitution proceedings." The charges were only relevant to the efficiency of the trust's administration. Whether they should have been incurred at all or whether they were excessive was not squarely at issue.

Nor, as we will see in discussing the merits of the surcharge claim, did the findings of the probate master during the substitution dispute finally resolve fact disputes central to Marshall's surcharge petition. Moreover, the interim charges were incurred during the substitution dispute, and that dispute was not finally resolved until September 18, 2002, when the final substitution order was entered.

We are also unconvinced that the claim is barred on the theory Marshall could have, i.e., should have, raised the issue previously. Accepting that argument would encourage interim litigation between trustees and beneficiaries before the merits of disputes are finally resolved. It would unduly enlarge the scope of issue preclusion in this context. The Manual Text to UPC § 7–307, which corresponds to AS 13.36.100, states that

> unless otherwise barred the beneficiary must initiate a proceeding within six months for anything that fully appeared on a final account that shows a termination of the trust relationship between the trustee and the beneficiary. There is no such

limitation on interim accounts, so that they may be barred only by adjudication or consent.[14]

This passage tends to confirm that issue preclusion does not bar disputes over interim charges.

In *McElroy v. Kennedy* we stated that "[w]here more than one claim arises from the same transaction or series of transactions, they must all be prosecuted in a single legal action or be lost."[15] But the amount and propriety of the trustee's charges were not litigated here before the surcharge petition was filed. There was consequently no serial litigation of the propriety of the charges.

Res judicata therefore did not bar Marshall's surcharge petition.

### 3. Marshall's standing as to charges incurred after substitution

▪▪▪ After entry of the original substitution order on May 9, First National incurred $4,287.50 in fees in responding to Marshall's petition seeking a corrected order; it charged this amount to the trust and reported these charges to the new trustee, Morgan Stanley. First National argues that this part of the surcharge claim is the trust's asset, that Morgan Stanley "owns" this claim, and that therefore only Morgan Stanley, and not Marshall, can bring this claim.

But AS 13.36.055 permits an "interested person" to file such a claim. Marshall is an "interested person" as that term is defined in AS 13.06.050(24), because she is a "beneficiar[y] ... having property rights in or claims against a trust estate." Alaska Statute 13.36.055 therefore gave her authority to seek review of the compensation of the trustee and the persons the trustee employed and to seek recovery, for the trust, of fees charged, including those charged after entry of the original substitution order.

### C. Recovery of Trustee's Fees

Marshall contends that First National should be ordered to repay the $15,697.18 it charged the trust in trustee and attorney's

---

14. 2 Richard V. Wellman, Uniform Probate Code Practice Manual 598 (2d ed.1977).

15. *McElroy v. Kennedy*, 74 P.3d 903, 908 (Alaska 2003).

fees as a result of the substitution dispute, or alternatively that we should remand for a determination of the fees' reasonableness. First National argues that it is entitled to retain all of the fees, because Marshall's surcharge claim is without merit.

### 1. Grounds for the denial

As we noted above in Part II, the superior court's denial order did not explain why the court denied the surcharge petition. The court intended to follow the probate master's recommendation that the petition be denied. After Marshall requested entry of findings and conclusions to explain the denial, the probate master entered findings and conclusions about a month after the superior court denied the petition. The probate master's findings and conclusions were apparently intended to explain the basis for his prior denial recommendation. We therefore assume that the court's denial is founded on the reasons the probate master later formally entered.

The probate master's findings and conclusions expressed three reasons for the recommendation that the petition be denied: (1) "there is no statutory provision or court rule expressly authorizing such a surcharge"; (2) the trustee "did not act in bad faith" in opposing the substitution petition; and (3) awarding a surcharge "would set a bad precedent and likely have a chilling and coercive effect on other similarly situated trustees that might have a disagreement" with the beneficiary.

There is no indication the court or the probate master denied the surcharge petition because the charges were reasonable or not excessive, i.e., after making fact findings about the trustee's compensation. We therefore apply our independent judgment in reviewing the three reasons given for the denial recommendation. We conclude that each is legally erroneous, and that none justifies summary denial of the surcharge petition.

First, contrary to the recommendation's assertion, there is statutory authority expressly authorizing such a surcharge: AS 13.36.055.

Second, the absence of bad faith on the part of the trustee does not completely preclude a surcharge sought under AS 13.36.055. The statute does not expressly require bad faith. And because its only express criteria are reasonableness and excessiveness, the statute does not implicitly require bad faith, either. Even charges incurred in good faith are potentially excessive or unreasonable.

Third, the legislature, in adopting section .055, set the applicable public policy. A trustee paid excessive fees can be ordered to repay them. If the concerns mentioned by the probate master outweighed the legislature's interest in permitting recovery of excessive fees, we are obliged to assume that the legislature would not have enacted the statute in the first place.

It was therefore legal error to deny the surcharge petition for the reasons discussed in the findings and conclusions. Nonetheless, there would be no reason to remand for consideration of the merits of the surcharge petition if it could be said as a matter of law that the disputed fees were not excessive and were reasonable. We must therefore consider whether there is a genuine dispute about the propriety of the compensation.

### 2. The statutory criteria: "reasonableness of the compensation" and "excessive compensation"

Because AS 13.36.055 does not give much guidance to courts considering the merits of such a petition, we briefly address the applicable substantive standards. The parties have not proposed a substantive standard that would resolve all such disputes. We therefore limit ourselves to determining whether, in this case, the former trustee's compensation was potentially excessive.

Alaska Statute 13.36.055 contains two general standards applicable here. It contemplates judicial review of "the reasonableness of the compensation determined by the trustee for the trustee's services." And it authorizes orders requiring a person to refund to the trust "excessive compensation." [16] With respect to disputes about a trustee's compensation, we assume that the two

---

16. AS 13.36.055.

839

terms—"reasonableness of the compensation" and "excessive compensation"—reflect standards that are exact opposites: reasonable compensation is not excessive and excessive compensation is not reasonable in the context of this case. Section .055 does not elaborate on the meanings of those terms. We hereafter use the terms in this sense.

■■■ The statute's terms should be given their "common and approved meaning."[17] The common meanings of the terms are not particularly helpful.[18] Courts in Alaska have extensive experience applying the standards of reasonableness and excessiveness to fee disputes in context of Alaska Civil Rule 82.[19] But attorney's fees cases discussing those standards rarely deal with trusts or fiduciaries.

### 3. Determining what is "excessive"

Compensation could be unreasonable or excessive for at least two reasons: because the services themselves were unreasonable or excessive, or because the fees charged were unreasonable or excessive. Marshall's surcharge petition inherently raises a question about the excessiveness, and even the propriety, of the trustee's opposition to the substitution petition. We therefore review the trust document, the applicable statutes, and the common law to determine whether they either approve or foreclose opposition to a petition for change of trustee.

■■■ We first look generally at the duties of a trustee. The general principles of

trust law are well known. A trustee is a fiduciary of the highest order and is held to a high standard of conduct.[20] A trustee must act fairly, justly, honestly, in the utmost good faith, and with sound judgment and prudence, but she is not the trust property's insurer.[21] In carrying out this duty, a trustee "shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another."[22] A trustee has a duty to "use reasonable care and skill to make the trust property productive,"[23] and "to invest and manage the funds of the trust as a prudent investor would, in light of the purposes, terms, distribution requirements, and other circumstances of the trust."[24] A trustee has a duty to invest so as to obtain the largest return possible consistent with the principal's safety.[25]

Alaska's statutes reflect these general principles. Alaska Statute 13.36.230 requires the trustee to act with "reasonable care, skill and caution." Alaska Statute 13.36.070 recognizes that, absent specific provisions otherwise, a trustee has "the general duty ... to administer a trust expeditiously solely for the benefit of the beneficiaries."[26]

Alaska Statute 13.36.090 addresses trust administration:

A trustee is under a continuing duty to administer the trust at a place appropriate to the purposes of the trust and to its sound, efficient management. If the principal place of administration becomes inap-

---

**17.** AS 01.10.040(a).

**18.** "Reasonableness" is defined as "the quality or state of being reasonable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1892 (1966). "Reasonable" is defined as:

being in agreement with right thinking or right judgment: not conflicting with reason: not absurd: not ridiculous ... being or remaining within the bounds of reason: not extreme; not excessive ... moderate ... not demanding too much .... not expensive ... that allows a fair profit ... having the faculty of reason: rational ... possessing good sound judgment: well balanced; sensible.

*Id.* "Excessive" is defined as "characterized by or present in excess ... exceeding the usual, proper, or normal ... very large, great, or numerous: greater than usual ... given to excess: intemperate." *Id.* at 792.

**19.** Alaska R. Civ. P. 82(b)(2), (b)(3).

**20.** 90A C.J.S. *Trusts* § 323 (2002).

**21.** *Id.*

**22.** 2 WELLMAN, *supra* note 14, at 583.

**23.** RESTATEMENT (THIRD) OF TRUSTS § 181 (1992).

**24.** *Id.* § 227.

**25.** 90A C.J.S. *Trusts, supra* note 20, § 485.

**26.** *See also* AS 13.36.245 ("A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries.").

propriate for any reason, the court may enter any order furthering efficient administration and the interests of beneficiaries, including, if appropriate, release of registration, removal of the trustee and appointment of a trustee in another state. Trust provisions relating to the place of administration and to changes in the place of administration or of trustee control unless compliance would be contrary to efficient administration or the purposes of the trust. Views of adult beneficiaries shall be given weight in determining the suitability of the trustee and the place of administration.

Per this section, First National had a continuing duty to administer the trust efficiently, wherever Marshall lived. The trust document is silent on the place of administration, although it names First National as trustee. Section .090 also imposed a duty on First National to give "weight" to Marshall's request to have the trust transferred to Morgan Stanley, but the statute does not specify how much weight a trustee must accord a beneficiary's request.

■ The statutes control trust disputes, unless the trust document permissibly deviates from the statute.[27] The trust document before us states its purposes. It grants the usual powers to the trustee. And, of potential interest here, it gives the trustee authority to "[j]oin in, maintain, compromise, defend or otherwise dispose of, any litigation or claim in any manner arising in connection with the trust property upon such terms as my Trustee may deem advisable." It also authorizes employing attorneys and paying for their reasonable compensation and expenses.[28] It provides for reimbursing and compensating the trustee.[29]

### 4. Genuine factual disputes

■ Marshall contends that the "entire lengthy, costly, legal proceeding was necessitated by [First National]'s failure to voluntarily resign as trustee when requested by Ms. Marshall in September, 2001." She argues that she had a legal right under AS 13.36.090 to substitute a local trustee in her home state of Colorado because she was an adult and her views were entitled to weight. She asserts that the probate master's "addition of a requirement of 'bad faith' to the breach of duty is not warranted by the statutes."

Marshall alternatively argues that even if bad faith were required, First National acted in bad faith. She contends that First National opposed "the change of trustee in an attempt to maintain control of the trust for the remaining ten years of its existence; a result which would have allowed it to continue to collect its fees for serving as trustee."

27. *Matter of Will of Allister,* 144 Misc.2d 994, 545 N.Y.S.2d 483, 486 (1989) (finding void clauses that conferred immunity on the fiduciary and that exculpated him from loss caused by his negligent conduct, because they conflicted with statute). Trust documents do, however, control when they authorize deviating from a statute restricting investment of trust funds. *E.g.,* 20 Pa. Cons.Stat. Ann. 7319(a) (West 2004); *Plainfield Trust Co. v. Hagedorn,* 28 N.J. 483, 147 A.2d 254, 258–59 (1958); *In re Estate of Libman,* 26 Misc.2d 854, 203 N.Y.S.2d 559, 561 (1960); *Estate of McCredy,* 323 Pa.Super. 268, 470 A.2d 585, 594 (1983) ("When the terms of a trust instrument prescribing a trustee's investment powers conflict with the Fiduciaries Code, the trust instrument controls.").

28. The trust gives the trustee power to:

Employ agents and attorneys, including, without limitation, investment counseling or management firms or individuals, establish discretionary trading accounts with brokerage or other firms, and establish agency or other similar accounts with banking institutions; pay reasonable compensation and expenses for such agents, attorneys or services without liability for the acts or defaults of such agents and attorneys, provided reasonable care shall have been exercised in their selection; to rely with acquittance on advice of such counsel on questions of law.

29. The trust also provides:

My trustee shall be reimbursed for any expenses incurred in connection with his services as such and may receive compensation in accordance with its then existing fee schedule for such trust services.

. . . .

Trustee shall be entitled to be paid out of the assets of the trust compensation in accordance with its then prevailing fee schedule for acceptance and administration and for payments and distributions made by Trustee, including extra compensation for unusual or extraordinary services performed by Trustee, and Trustee shall be entitled to reimbursement out of the assets of each trust for all costs and expenses reasonably incurred.

Quoting AS 13.36.070, Marshall asserts that First National's refusal to resign voluntarily was a breach of its duty "to 'administer a trust expeditiously for the benefit of the beneficiar[y].'"

First National points out that Marshall began the litigation and contends that it acted in good faith in defending the trust.

The probate master's April 4, 2002 report found that

> no evidence was presented nor serious contention made that First National Bank Alaska has been deficient in any way in performing trustee duties regarding the subject trust. There is no evidence of good cause for removal of First National Bank Alaska for any failure to perform trustee duties in an efficient and appropriate matter or for breach of fiduciary duty.

The probate master therefore apparently found that First National performed every duty the statutes required it to perform with regard to efficient administration of the trust. Nevertheless, the probate master relied on the last sentence of AS 13.36.090 in recommending substitution of Morgan Stanley for First National. The probate master apparently gave more weight to Marshall's view than First National did, although the statute's lack of specificity about how much weight to accord to Marshall's view means that First National's evaluation of her request was not necessarily unreasonable. The probate master did not fault First National and specifically stated that First National did not act in bad faith in opposing "the original petition." We assume that the superior court accepted these findings, because it followed the recommendation and ordered substitution.

These findings seem to encompass First National's initial response to Marshall's requests to change trustees, but it is not clear what bearing they should have on a repayment claim under AS 13.36.055. They do not purport to apply the standards specified in AS 13.36.055, and they fail to address other factors that might be relevant. They were made before all of the fees were incurred. Nor is there any indication the probate master reviewed all the billing records and considered whether the fees were specifically or globally reasonable. Furthermore, the findings were made in context of the substitution dispute, which was fully resolved on a different ground; given the reason for ordering substitution, it was not necessary to consider these alternative reasons.

The surcharge petition was filed only after the substitution dispute was resolved. The issues of reasonableness and excessiveness in context of a repayment claim under AS 13.36.055 were not litigated previously, except to the limited extent they bore on the substitution petition. And because the surcharge petition was denied on grounds that avoided application of the statutory standards, there is no indication that the probate master thought his earlier findings resolved the merits of the statutory surcharge petition. We conclude that they did not. We think that these findings are relevant, but not dispositive.

We leave it to the court on remand to consider whether prolonged opposition to a request to change trustees was consistent with the statutes or the trust document. We assume that First National, at least at first, had legitimate reasons for opposing its removal as trustee before the court signed the May 9 substitution order. Correspondence in the record indicates that First National initially opposed Marshall's informal substitution request because it believed Marshall sought the change so she could influence the trust investment strategy in a way that would potentially defeat the trustors' purposes as expressed in the trust. Cases elsewhere provide some support for First National's initial opposition.[30] Investment strategy remains the trustee's prerogative

---

30. See, for example, *In re Zoellner Trust*, 212 Neb. 674, 325 N.W.2d 138 (1982), relied upon by First National below and on appeal. The Supreme Court of Nebraska there denied removing the trustee, stating that "[a] place of administration which may be less efficient, less convenient, or less pleasant is not necessarily improper or unsuitable unless, in combination with other circumstances, it interferes with the proper administration of the trust." *Id.* at 141. *Zoellner* is factually distinguishable, but First National could have relied on a case like *Zoellner* in initially resisting Marshall's petition.

under terms of the trust. But First National only briefly relied on those substantive grounds in opposing Marshall's substitution petition, and its other reasons seem unpersuasive. The probate master's report recommending substitution implicitly recognizes the frailty of First National's opposition.[31]

There is therefore an unresolved question whether First National's efforts in opposing substitution before May 9, 2002 resulted in excessive compensation. We remand for determination of whether the charges incurred before May 9, 2002 are appropriate.

The court should consider even more critically the reasons given for the services performed after May 9, 2002, when the initial substitution order was entered. Marshall argues that First National exacerbated the breach when it incurred charges of $4,287.50 in objecting to the petition for a corrected order and in pursuing relief under Civil Rule 60(b) in attempting to overturn the May 9 substitution order. First National claims that Marshall's July 18 petition for a corrected order raised different issues from the administration issue, which was the basis for her first petition.

Marshall's petition for a corrected order stated that "Morgan Stanley's national corporate situs is in Jersey City, New Jersey, although Tatiana Marshall's contact person for trust matters is and will continue to be her financial advisor in Boulder, Colorado." This petition also requested other revisions, but Marshall withdrew those requests. It should have been reasonably apparent when Marshall first informally requested a change that the trust assets administered by Morgan Stanley would not be physically situated in Colorado, and that Marshall's Colorado advisor would simply have electronic access to the trust assets. Because First National had already agreed to resign as trustee, its opposition to the petition for corrected order seems particularly unpersuasive.

We are not in a position to determine whether particular services or fees in this case were excessive. Drawing all reasonable inferences in favor of Marshall, we think a court carefully reviewing First National's efforts in opposing substitution and the fees charged could find that the efforts and fees were excessive at least in part.

■ Absence of bad faith will not preclude the recovery claim on remand. Alaska Statute 13.36.055 does not explicitly or implicitly require that the trustee have acted in bad faith as a prerequisite to recovery of the litigation costs the trustee charges the trust in opposing its removal as trustee. Even opposition that was well-intended and not in bad faith may be excessive.

■ The outcome of the underlying dispute does not determine whether the charges were excessive. A trustee must be able to expect compensation for the essential service of determining whether a proposed change would defeat the trustor's expectations or the trust's terms. But a trustee cannot expect to be compensated for excessive efforts after legitimate concerns have been allayed.

■ A trustee must, by statute, administer the trust solely for the beneficiary's benefit.[32] This requires the trustee to act at all times in good faith with respect to the trust. This is a high standard, but a trustee is a fiduciary of the highest order.[33] We therefore conclude that a trustee must incur only reasonable charges and act in good faith with respect to the trust, in addition to meeting any other requirements specific to the particular case, if it is to be entitled to charge the trust its legal and other costs.

Other factors may also be relevant on remand, such as the total amount of the fees, the size of the trust relative to the amount of

---

31. The probate master reported:
 The trustee contends that the requested change is "contrary to the expressed provisions of the trust and unauthorized by the statute." The bank does not cite any specific language in the trust prohibiting substitution of a trustee or change of venue but it emphasizes the trustor's thirty-two year employment history with the bank and argues that the trustor's choice of First National Bank Alaska as trustee was a deliberate and fundamental preference of the trustors evidencing their confidence in the bank.

32. AS 13.36.070, .245.

33. 90A C.J.S. *Trusts, supra* note 20, § 323.

the fees, the merits of the parties' arguments on the substitution dispute, the extent to which the opposition is based on the beneficiary's best interests in accordance with the trust document and the Alaska Statutes, and the duration, extent, and expense of the trustee's opposition. The parties or the court on remand may identify other relevant factors.[34]

Authority elsewhere tends to support payment of fees to the removed trustee. Some cases approve imposing on the trust the costs incurred by a trustee who unsuccessfully opposes removal in good faith. Thus, in *In re Weinberger's Trust* a New York court permitted the transfer of a trust to California and ordered all parties' costs to be paid from the trust estate.[35] Other cases are in accord.[36]

But there is some contrary authority. Bogert's *Trusts & Trustees* states that

> [w]here the trustee unsuccessfully resists a proceeding for his removal, he may be compelled to pay the costs personally. This may be regardless of the grounds upon which removal is decreed. It may be that he has not been at fault in any way, but simply become incapable of acting further, as by reason of ill health. Nevertheless, if he resists the action he may be required to pay the costs.[37]

In *In re Gilmaker's Estate* the court found that a trustee that unsuccessfully resisted its removal was not entitled to have the ex-

penses "incurred in defending its untenable and partisan position" paid from the trust estate.[38] Although the lower court found that the trustee acted in good faith, and the appellate court did not overrule this finding, the court on appeal stated that "the trustee erred in its administration of the estate and that it had no sound basis for its resistance to the beneficiary's petition for its removal."[39] The trustee also "failed to administer the trust in conformity with its terms" and defended a position "for which no reasonable support can be found in the trust provisions and the governing law."[40]

These authorities do not convince us either that the former trustee, as a matter of law, must repay all of the disputed fees or that a trustee's good faith opposition to its substitution forecloses a surcharge claim.

## IV. CONCLUSION

We therefore REMAND this case for determination of whether the disputed services and fees resulted in excessive compensation, and, if necessary, for entry of an order for repayment of fees.

**34.** One such factor may be the extent to which Marshall's failure to give timely notice of the petition to substitute to First National resulted in added legal work.

**35.** *In re Weinberger's Trust*, 21 A.D.2d 780, 250 N.Y.S.2d 887, 888 (1964).

**36.** *McKennell v. Guar. Trust Co.*, 130 Misc. 400, 223 N.Y.S. 598, 598 (1927); *In re Pelgram's Estate*, 146 Misc. 750, 262 N.Y.S. 848 (1933); *see also Zaring v. Zaring*, 219 Ind. 514, 39 N.E.2d 734, 737 (1942) (stating that it was possible both

sides in trust dispute could potentially be compensated from trust).

**37.** GEORGE GLEASON BOGERT AND GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS & TRUSTEES § 525, at 45–46 (2d ed.1993).

**38.** *In re Gilmaker's Estate*, 226 Cal.App.2d 658, 38 Cal.Rptr. 270, 272 (1964).

**39.** *Id.*

**40.** *Id.*