RENEE BAUZIERE SAULSBURY ET AL. *v*. THE
DENTON NATIONAL BANK

[No. 289, September Term, 1974.]

*Decided April 10, 1975.*

The cause was argued before MORTON, MOYLAN, and MOORE, JJ.

*George W. Liebman,* with whom were *Shale D. Stiller* and *Frank, Bernstein, Conaway & Goldman* on the brief, for appellants.

*Frank M. Benson, Jr.,* and *Rob Ross Hendrickson* with whom was *Philip E. Nuttle, Jr.,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This appeal involves the single question whether a trustee, called upon to defend its administration of the trust and itself against an effort to remove it as trustee, may recover counsel fees from the trust assets.

Irwin T. Saulsbury, Sr. died on January 5, 1949, leaving a Last Will and Testament dated August 22, 1946. Under one of the provisions of that will, a trust estate was established. The life tenants of the trust estate were the settlor's son, Irwin T. Saulsbury, Jr., and the son's wife, Renee Bauziere Saulsbury (one of the appellants here). The remaindermen were Jacqueline Bauziere Spencer, Gabrielle DeRochebrune Leavin, Rebecca Anne Griffith and Renee Saulsbury Arnold, the children of Irwin T. Saulsbury, Jr. and Renee Bauziere Saulsbury (and the joint appellants here with their mother). Irwin T. Saulsbury, Jr. was deceased before the commencement of the present petition. The Denton National Bank (appellee) was named as trustee under the settlor's will and has remained as trustee during the intervening twenty-six years.

On August 22, 1972, the appellants petitioned, in the Circuit Court for Caroline County, for the removal of the Denton National Bank as trustee. The petition sought the

assumption by the court of general jurisdiction over the non-judicially administered trust estate, surcharge of the trustee bank for certain alleged acts of malfeasance, and the forfeiture of trustee's commissions. On September 15, 1972, the trustee bank demurred and answered the petition. The demurrer was overruled on November 22, 1972. Three depositions were taken and filed. On November 13, 1973, the trustee bank served interrogatories upon the appellants, which, because of supervening events, were never answered. On December 3, 1973, the appellants moved to dismiss the action without prejudice, because of the serious illness (congestive heart failure) of the surviving life tenant, the appellant Renee Bauziere Saulsbury. The trustee bank offered no opposition to the dismissal of the action without prejudice, except that it reserved to itself a claim for counsel fees incurred in the course of the litigation.

On January 21, 1974, the trustee bank filed its Petition for Allowance of Counsel Fees, to which the appellants responded on February 22, 1974. A hearing was held upon the Petition before Judge James A. Wise, in the Circuit Court for Caroline County. On April 15, 1974, Judge Wise issued an Opinion and Decree allowing the trustee the sum of $4,750 as counsel fee, to be charged against the income account of the trust estate. The reasonableness of the amount is not in dispute. Nor is there any dispute about charging the counsel fee against the income account of the trust estate rather than against the corpus. The sole question is whether the trustee is permitted to recover counsel fees generally from the trust assets in a situation such as that presented here.

We note initially that the appellants' reliance on *Empire Realty Co. v. Fleisher*, 269 Md. 278, 305 A. 2d 144 (1973), is totally misplaced. That case stands for the general proposition that each side in a litigation will bear its own attorneys' fees.[1] When trustees, however, defend the

---

1. This general rule is subject to an exception, not here pertinent, spelled out in Maryland Rule 604b, which provides:

"In an action or part of an action, if the court finds that any

administration of the trust, to charge the necessary counsel fees to the trust assets is not to charge those fees to an adverse party but rather to the party which, of necessity, retained the attorneys. This is true even when the adverse parties, attacking the administration of the trust, are the beneficiaries under the trust.

Maryland has long recognized the general proposition that legal costs are a necessary part of the cost of administering a trust. In *Cook v. Boehl*, 188 Md. 581, 589, 53 A. 2d 555 (1947), the Court of Appeals said:

> "It is an unquestioned rule that when a trustee in a court of equity finds it necessary to obtain legal assistance in the management of the trust estate, the court will allow him such reasonable fees as he may be required to pay in properly taking the advice and procuring the direction of counsel."

The same general proposition was stated in *Taylor v. Denny*, 118 Md. 124, 132, 84 A. 369 (1912):

> ". . . [T]he right of a trustee to employ counsel and pay him out of the trust fund is thoroughly established, when the Court can see that it is necessary for the proper administration of the trust for the trustee to have legal advice or the aid of an attorney."

And cf. *Knapp v. Knapp*, 151 Md. 126, 134 A. 24 (1926). See also *Sollers v. Mercantile-Safe Deposit and Trust Company*, 262 Md. 606, 611, 278 A. 2d 581 (1971).

It is the position of the appellants, however, that where the defendant-trustee is not directly preserving the assets of the trust but is rather fighting a legal battle to preserve his own status as trustee, he is acting not on behalf of the trust but on behalf of himself. Notwithstanding a certain surface

---

proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay the court shall require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorneys' fees."

logic in the proposition, the authorities are clear that a successful defense by a trustee against an effort to remove him as trustee is a defense on behalf of the trust estate itself. Bogert, *Trusts and Trustees* (2d Edition, 1960) states at § 525:

> "If the attempt to remove the trustee fails, it is proper to order payment of costs out of the trust estate. It may happen, however, that the suit appears malicious and some of the beneficiaries have taken no active part in bringing it. To charge costs to the trust estate under these circumstances would result in an inequitable distribution of the consequences of ill-advised action. In such a case, therefore, the petitioners may be compelled to pay the costs personally."

Bogert goes on at § 809:

> "The expenses of the trustee in a successful defense of a proceeding to remove him have been charged to trust capital, but if he is removed he must pay his own expenses. And so, too, if a trustee is successful in defending a suit to surcharge him for breach of trust, the court may charge his counsel fees to the trust capital."

To a similar effect is 3 *Scott on Trusts* (3rd Edition, 1967) at § 188.4:

> "Where the beneficiaries bring a proceeding for the removal of the trustee, the trustee can properly charge the estate with the expense of defending the proceeding."

In the present case, moreover, the petition of the appellants was not simply to remove the Denton Bank as sole trustee but to subject that trustee to a surcharge. Scott, *loc. cit.*, is also clear in this regard:

> "So also the trustee can properly pay out of the trust estate expenses of litigation incurred in a

successful attempt to prevent the beneficiaries from subjecting the trustee to a surcharge."

2 Perry, *A Treatise on the Law of Trusts and Trustees* (7th Edition, 1929), makes clear the reason for the above rule at § 894, pp. 1515-16:

"The reason involved in the rule is this: trustees have no beneficial interest in the trust property. They hold it for the accommodation and benefit of others. If they perform their duties faithfully, and are guilty of no unjust, improper, or oppressive conduct, they ought not in justice and good conscience to be put to any expense out of their own moneys. If, therefore, they are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client."

The classic judicial statement of this principle was by Cardozo in 1918 in the case of *Jessup v. Smith*, 223 N. Y. 203, 119 N. E. 403. One of the trustees under the will of Samuel J. Tilden successfully defended himself against an effort to have him removed as trustee. In holding that he was, therefore, entitled to the payment of counsel fees out of the trust assets, Judge Cardozo reasoned, at 119 N. E. 404:

"The question remains whether the services were beneficial in the preservation of the trust. We have no doubt that they were. Mr. Smith had been named in the will as a trustee. He owed a duty to the estate to stand his ground against unjust attack. He resisted an attempt to wrest the administration of the trust from one selected by the testator and to place it in strange hands."

In 1959 in *Weidlich v. Comley*, 267 F. 2d 133, Judge Learned Hand, for the Second Circuit, applied the rule of *Jessup v. Smith*, holding at 134:

". . . [T]he plaintiff's first complaint is the allowance to the defendant out of the trust assets of

his expenses in defending himself in the action. The argument is that these expenses were incurred in the defendant's individual interest, and may not be charged against the trust. That completely misses the true situation: a trustee was appointed to administer the assets; the settlor selected him to do so, and whatever interferes with his discharge of his duty *pro tanto* defeats the settlor's purpose. When the trustee's administration of the assets is unjustifiedly assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor's purpose. To compel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to his acceptance of the burden of his duties. This has been uniformly the ruling, so far as we have found. *Jessup v. Smith,* 223 N.Y. 203, 207, 119 N.E. 403; *Matter of Bishop's Will,* 277 App. Div. 108, 98 N.Y.S.2d 69; 301 N.Y. 498, 95 N.E.2d 817; *Gordon v. Guernsey,* 316 Mass. 106, 55 N.E.2d 27; *Scott on Trusts* § 188.4."

And see *Willson v. Whitehead,* 181 Va. 960, 27 S.E.2d 213 (1943); *Monroe v. Winn,* 19 Wash. 2d 462, 142 P. 2d 1022 (1943); *Kerner v. Peterson,* 368 Ill. 59, 12 N.E.2d 884 (1937); *In re Freeman's Trust,* 247 Minn. 50, 75 N.W.2d 906 (1956); *Powell v. Cocowitch,* 94 So. 2d 589 (Fla., 1957); *In re Lair's Estate,* 52 Cal.App.2d 222, 126 P. 2d 133 (1942); *In re Coulter's Estate,* 379 Pa. 209, 108 A. 2d 681 (1954); *Ingalls v. Hare,* 266 Ala. 221, 96 So. 2d 266 (1957). *Contra: Whiting v. Bryant,* 105 Ohio App. 141, 144 N.E.2d 240 (1957); *Franz v. Buder,* 82 F. Supp. 379 (E.D. Mo. 1932).

The appellants' effort to erode the principle of *Jessup v. Smith* on the authority of *In re Estricher's Estate,* 202 Misc. 431, 111 N.Y.S.2d 295 (1952) is unavailing. The opinion was handed down at the *nisi prius* level, in the Surrogate's Court of New York County. Its affirmance at the Appellate Division level was simply by memorandum, 281 App. Div.

828, 118 N.Y.S.2d 922, and leave to appeal was denied by the Court of Appeals of New York, 305 N. Y. 930, 112 N.E.2d 287 (1953). The literal holding, moreover, cannot help the appellants, since that holding was that the surrogate is vested with discretion in the matter of awarding counsel fees and that he does not abuse that discretion when he withholds from a defending trustee the payment of counsel fees from the trust assets. It does not stand for the converse proposition (necessary to the appellants here) that the surrogate would necessarily have abused his discretion had he awarded counsel fees from the trust assets to the defending trustee. The factual situation in the *Estricher* case, furthermore, makes it clearly distinguishable from the one at bar. There were findings of fact by the surrogate in that case that the trustee had been "remiss in the performance of certain of its trust duties and the court does not condone its acts." [2] In the instant case, by way of contrast, there were no findings of fact on the merits of the management of the trust or the conduct of the trustee. No testimony was taken on this question and no exhibits were offered in evidence. The only thing before Judge Wise was the motion of the appellants to dismiss the petition and the claim of the appellee for counsel fees.

Nor may the appellants take any comfort in *Schindel v. Brenauer,* 136 N.J.Eq. 94, 40 A. 2d 631 (1945). The primary holding of the Court of Errors and Appeals of New Jersey, in denying an award of counsel fees from the trust assets, was

---

2. The court said, in pertinent part, at 111 N.Y.S.2d 298-299:

"Retention of office is not in every instance an exoneration from blame ... Fiduciaries have been permitted to recover costs and allowances for legal services in successfully opposing removal when such opposition was beneficial to the estate ... This court did not consider the charges against the petitioning trustee to be unfounded nor the proceeding for its removal unjustified. The court denied the application to revoke the letters of trusteeship only because it deemed removal not to be to the best advantage of the estate despite the justified criticism of the trustee's conduct. The denial of the application for removal was neither an exoneration of the trustee nor an implicit finding that the opposition to the application was in the interest of the estate."

that the litigation there involved a contested election to a trusteeship and not the administration of the trust by one duly qualified.[3]

The appellants seek to distinguish the broad principle represented by *Jessup v. Smith* by pointing out that the trustee here did not successfully defend the suit upon the merits. It could not, of course, because the suit was aborted by the appellants themselves. Their effort to shift the burden to the defendant-trustee to establish that its defense would have been bona fide had the issue reached a trial upon the merits, after they themselves aborted the trial, is an intolerable instance of wishing "to have their cake and eat it too." In rejecting such a notion, we find persuasive *First National Bank of Mishawaka v. Kamm*, 283 N.E.2d 563 (Ind. 1972). In that case, no trial was had upon the merits because of the successful Plea in Abatement of the defendant attorneys. The Indiana Court of Appeals held that where the trustee, whose removal was sought, prevails, even short of an adjudication on the merits, the burden does not shift to him or to his attorneys to litigate in a vacuum and to establish that he would have prevailed on the merits, had the merits of the case ever been reached. The court said, at 565:

> "The services were rendered in defense of an action against one of the cotrustees for failure to account, for comingling of trust funds and for refusing beneficiaries access to trust records. There was never an adjudication on the merits of the controversy concerning the alleged misconduct of the cotrustee. The question then becomes whether

---

**3.** The court said, at 40 A. 2d 633:

"However, it is evident that this case differs from one where an attempt is made to remove a trustee from his position for alleged misconduct of the estate. In this suit, there was no charge of failure to properly perform the duties of trustee, but that fraud was committed in his selection. It was a personal controversy between two candidates for the position. . . . Here the challenge is of the right to administer by reason of fraud in election, so that it is not a matter involving the alleged improper administration of the trust, as in all cited cases."

the alleged misconduct can be raised as a defense to the petition for attorney fees. We believe not and now so hold.

. . .

The conduct of the cotrustee is not an issue in this case. The beneficiaries had the opportunity to litigate the alleged misconduct of the cotrustee and they failed in their initial attempt. They did not ʳenew the action against the original defendants. Appellant, by attempting to raise the conduct of the cotrustee as a defense, is endeavoring to relitigate the old lawsuit anew and to thereby place upon Appellees, not only the burden of justifying their expenses, but also the burden of showing that if the prior lawsuit had been heard on the merits, the cotrustee would have been exonerated. It is a burden Appellees need not and should not have to assume.

Appellant relies upon the clearly established rule of law to the effect that a trustee who has been adjudged guilty of misconduct cannot charge the expenses of the defense of the suit to the trust fund. ... Where the trustee has been found guilty of personal misconduct, the costs of the suit become personal to him. But the above rule presupposes that there has been a final adjudication on the merits as to the charges brought against the trustee. Such is not the case here.

We hold that unless there has been a final determination as to the alleged misconduct of the cotrustee, such alleged misconduct cannot be interposed as a defense to a petition for attorney fees for the services rendered in defending the trustee."

*Order of the Circuit Court for Caroline County affirmed; costs to be paid by appellants.*