*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARC COTTINI, | ) | |
| | ) | Supreme Court No. S-16312 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-01828 PR |
| v. | ) | |
| | ) | O P I N I O N |
| JOHN BERGGREN and | ) | |
| OLENA BERGGREN, | ) | No. 7250 – June 15, 2018 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Susan Orlansky, Reeves Amodio LLC, Anchorage, for Appellant. Christina M. Passard, Woelber & Passard, LLC, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

A former agent, appointed under a power of attorney, successfully defended an accounting of his actions, expenditures, and fees against objections and counterclaims by his former principal. In this appeal we are asked to resolve whether the former agent is entitled to reimbursement from his former principal for reasonable attorney's fees incurred in maintaining that defense. The superior court denied the agent's request for

attorney's fees because the dispute occurred in the context of a guardianship proceeding and because the request did not meet the requirements of AS 13.26.291, which governs cost-shifting in guardianship proceedings. The agent appeals, arguing that AS 13.26.291 does not apply, that he is entitled to attorney's fees based on his authority as an agent to hire an attorney under AS 13.26.665(m), and that he is entitled to attorney's fees based on common law principles, equity, and considerations of public policy. We conclude that neither statute applies, but that the agent may be entitled to reimbursement of his attorney's fees under the common law of agency and as a matter of equity. We therefore reverse the superior court's order and remand for further proceedings.

## II.     FACTS AND PROCEEDINGS

John Berggren is an Anchorage resident with business and real estate interests worth over $12 million. He executed a general power of attorney in 2007 naming Marc Cottini as his attorney-in-fact — his legal agent[1] — in the event he became incapacitated. Berggren suffered a traumatic brain injury in July 2013, triggering the power of attorney. After the accident Berggren's attorney, David Shaftel, informed Cottini that he had been named Berggren's agent. Shortly after Cottini assumed his role as agent, Berggren's wife Olena filed a petition for guardianship. Acting as Berggren's agent, Cottini opposed the guardianship petition on Berggren's behalf. Over the next eight months, Cottini acted as Berggren's agent until, after court-ordered medical examinations concluded that Berggren had regained the capacity to manage his own affairs, the court terminated the agency. Olena withdrew her guardianship petition shortly afterwards. The court ordered Cottini to produce an accounting of his actions and expenditures during the time of his agency, which he did with the assistance of Shaftel's law firm. Shaftel represented Cottini in his capacity as Berggren's agent.

---

[1]        We use the term "agent" to refer to Cottini's relationship with Berggren.

The accounting requested the court approve $71,683.57 as Cottini's fees and costs for acting as Berggren's agent. This included compensation for Cottini's time at a rate of $50 per hour. Cottini later declared that the accounting showed he processed transactions involving $1,064,947 including handling Berggren's personal and joint expenses and paying invoices amounting to $242,263. Berggren objected to Cottini's accounting,[2] arguing that Cottini's actions were not taken to advance Berggren's best interests, and that Cottini's fees were excessive.

Berggren also filed counterclaims alleging breach of Cottini's fiduciary duties and listing objections to specific requested fees and costs. Cottini hired a second attorney, Diane Vallentine, who appeared before the court "for the sole purpose of representing Mr. Cottini with regard to the Joint Objection to Accounting of Agent's Fees." Documents filed with the court consistently identified Shaftel as representing Cottini in his capacity as agent and Vallentine as representing Cottini individually; despite making this distinction, the two attorneys consistently cosigned filings and worked together.

Eventually, the parties settled. Berggren agreed to dismiss the counterclaims with prejudice, withdrew the objections, and agreed to pay most of what Cottini had initially requested; Cottini agreed to accept a slightly reduced total amount in fees and reimbursement in exchange for prompt payment. The parties reserved all issues regarding attorney's fees for decision by the court.

Shortly thereafter, Cottini filed a motion asking the court to award him $148,254 in attorney's fees incurred for Vallentine's work in assisting him in responding

---

[2]     The objections were filed jointly by both John and Olena Berggren, as were all their subsequent briefs and arguments both before the superior court and on appeal. Because of their common claims, and for ease of reference, we refer to the Berggrens collectively as "Berggren."

to Berggren's objections and in defending against Berggren's counterclaims. Cottini argued that as the appointed agent he was required to prepare an accounting of his actions, expenditures, and fees and that he was entitled to full payment of the attorney's fees he incurred in successfully defending the accounting under the power of attorney statute, specifically AS 13.26.665(m)(4),[3] which outlines a statutory agent's authority to hire and compensate attorneys. Cottini also contended that attorney's fees were warranted because Berggren had objected to the accounting in bad faith, and defending the accounting was necessary to make Cottini whole for his time and financial expenditures and to ensure third parties would not go unpaid. Berggren opposed the motion for attorney's fees, arguing that AS 13.26.665(m) did not apply because the legal services at issue benefited Cottini, not Berggren; that while the objections to Cottini's accounting were ultimately withdrawn, those objections were reasonable; and that the attorney's fees Cottini incurred were unreasonable. Berggren also argued that any request for legal fees should have been made under the fee-shifting provisions of Alaska Civil Rule 82.

The superior court denied Cottini's motion for attorney's fees. The court held that AS 13.26.665(m)(4) did not apply to the fee request because the statute allows reimbursement only for attorney's fees incurred for services to the principal that the agent reasonably believes are desirable for the proper execution of the agent's powers. The court, citing Vallentine's limited entry of appearance for the sole purpose of representing Cottini with regard to Berggren's objections, concluded that none of the attorney representation with respect to Berggren's objections fell within that statutory framework. The court also concluded that Alaska Civil Rule 82 has been displaced by

---

[3]     Formerly AS 13.26.344(m)(4), renumbered as AS 13.26.665(m)(4) in 2016 SLA.

AS 13.26.291(d)[4] as the governing rule for fee-shifting in any guardianship case, and that this statute required Berggren to pay for Cottini's attorney's fees only if adversary proceedings were initiated maliciously, frivolously, or without just cause. The court found that Berggren had not acted in such a manner when objecting to Cottini's accounting and that Cottini therefore was not entitled to attorney's fees. The court denied Cottini's motion and did not rule on any of Berggren's fact-based claims that some of the fees were excessive or unreasonable.

Cottini appeals the single question whether he is entitled to reimbursement for reasonable attorney's fees incurred in defending his actions and expenditures as Berggren's agent and in defending his requested fees.

## III.   STANDARD OF REVIEW

"[W]e independently review 'whether the trial court properly applied the law when awarding attorney's fees.' "[5] "Determinations of which legal authorities apply in a case and interpretations of what those legal authorities mean are questions of law subject to de novo review."[6] When determining the meaning of a statute, we "look to the meaning of the language, the legislative history, and the purpose of the statute," and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

---

[4]      Formerly AS 13.26.131(d), renumbered as AS 13.26.291(d) in 2016 SLA.

[5]      *State, Office of Pub. Advocacy v. Estate of Jean R.*, 371 P.3d 614, 618 (Alaska 2016) (quoting *Baker v. Ryan Air, Inc.*, 345 P.3d 101, 106 (Alaska 2015)).

[6]      *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (footnotes omitted).

[7]      *Marshall v. First Nat'l Bank Alaska*, 97 P.3d 830, 834 (Alaska 2004) (quoting *Enders v. Parker*, 66 P.3d 11, 13-14 (Alaska 2003)).

## IV.  DISCUSSION

Cottini argues that the superior court erred in relying on AS 13.26.291 to deny his attorney's fees request because the statute's cost-shifting provisions refer to petitioners and respondents in a guardianship proceeding, and Cottini was neither.  He also argues that AS 13.26.665(m) contains specific provisions that govern an agent's ability to hire attorneys, and that this statute therefore displaces Alaska Civil Rule 82's familiar fee-shifting provisions and entitles him to reasonable attorney's fees incurred in successfully defending against the challenges to his accounting because the defense also benefited Berggren.  Finally, Cottini points to case law and treatises from analogous contexts, public policy concerns, and our decision in *Marshall v. First National Bank Alaska*,[8] all of which he argues support his construction of AS 13.26.665(m), or alternatively support an award of attorney's fees on either common law or equitable grounds.

We conclude that AS 13.26.291, which applies in guardianship contexts, is inapplicable to the attorney's fees dispute here because this dispute is between an agent appointed under the statutory form power of attorney and his principal, not a respondent contesting a guardianship petition brought in bad faith.  We also conclude that AS 13.26.665(m), while not inconsistent with the conclusion that an agent is entitled to attorney's fees incurred in a successful defense of his accounting, does not provide a controlling rule of decision.  However, we hold that under the substantive common law of agency and as a matter of equity, an agent may be entitled to attorney's fees incurred in successfully defending his actions, expenditures, and fees, depending on a set of factors outlined in this opinion.

---

[8]  *Id.*

## A. Alaska Statute 13.26.291 Does Not Govern Cottini's Motion For Attorney's Fees.

Alaska Statute 13.26.291 provides, in relevant part:

> (a) Subject to (d) of this section, the state shall bear the costs of the visitor and expert appointed under AS 13.26.226(c).

> (b) Subject to . . . (d) of this section, the respondent shall bear the costs of the attorney appointed under AS 13.26.226(b) . . . and of other court and guardianship costs incurred under this chapter.

> . . . .

> (d) The court may require the petitioner to pay all or some of the costs described in (a) and (b) of this section if the court finds that the petitioner initiated a proceeding under this chapter that was malicious, frivolous, or without just cause.

As we recently explained in *In re Vernon H.*, "Alaska Statutes 13.26.[291](a) and (b) allocate certain categories of costs in guardianship proceedings to the state, respondent, and petitioner."[9] Alaska Statute 13.26.291(d), in turn, "enables the court to shift those costs to the petitioner '. . . if the court finds that the petitioner initiated a proceeding under this chapter that was malicious, frivolous, or without just cause.' "[10] We also held that "fees of privately retained counsel and experts qualify for fee shifting pursuant to AS 13.26.[291](d) if the other requirements of that subsection are also satisfied,"[11] and

---

[9] 332 P.3d 565, 572 (Alaska 2014).

[10] *Id.* (quoting former AS 13.26.131(d)).

[11] *Id.* at 573.

that AS 13.26.291(d) therefore "entirely displaces Civil Rule 82" and "forecloses any role for Civil Rule 82 in the guardianship and conservatorship context."[12]

The superior court concluded that AS 13.26.291(d) was the applicable standard for determining which party was responsible for the attorney's fees in this case, relying on our ruling in *In re Vernon H.* Berggren argues that AS 13.26.291 governs because the case now before us was initiated by a guardianship petition, Cottini was an active participant in the guardianship case, and Cottini filed his motion for attorney's fees in the guardianship case. Berggren also argues that Cottini's fees request falls within the statute's provisions because of our holding in *In re Vernon H.* that fees of privately retained counsel are covered by AS 13.26.291, and because, as Berggren puts it, subsection (b) of that statute "provides for the bearing of costs for 'other court and guardianship costs incurred under this chapter.' "[13] We disagree.

Our explanation in *In re Vernon H.* of how AS 13.26.291 operates makes clear that this statute is inapplicable to this attorney's fees dispute. As we explained, "Alaska Statutes 13.26.[291](a) and (b) allocate certain categories of costs in guardianship proceedings to the *state, respondent, and petitioner*."[14] And "Alaska Statute 13.26.[291](d) enables the court to shift those costs to the *petitioner* '. . . if the court finds that the *petitioner initiated a proceeding under this chapter* that was malicious, frivolous, or without just cause.' "[15] Cottini is not a respondent seeking fees from a petitioner who initiated a guardianship proceeding, maliciously or otherwise. He is an agent appointed under a statutory form power of attorney seeking reimbursement

---

[12]    *Id.* at 577.

[13]    AS 13.26.291(b).

[14]    *In re Vernon H.,* 332 P.3d at 572 (emphasis added).

[15]    *Id.* (emphasis added) (quoting former AS 13.26.131(d)).

from his principal for the cost of defending his actions, expenditures, and fees. Although Cottini requested attorney's fees for privately retained counsel, and *In re Vernon H.* held that fees of privately retained counsel are covered by AS 13.26.291(d), that holding was made in the context of a respondent who was opposing a guardianship petition.[16] Reading *In re Vernon H.* to include the attorney's fees sought in this principal–agent case would require ignoring the plain language of AS 13.26.291. Unlike with private attorney's fees sought by a respondent in a guardianship case, there is no textual basis for applying AS 13.26.291 to an agent seeking reimbursement from his principal for attorney's fees incurred in defending his accounting.

The superior court's factual analysis also illustrates the statute's incompatibility with this case. The court's analysis was not focused on whether Olena Berggren's initial decision to initiate a guardianship proceeding was frivolous, malicious, or without cause, as AS 13.26.291 directs.[17] Instead, it analyzed the opposition to Cottini's accounting, implicitly recognizing that the real underlying matter at issue was not the guardianship petition, but rather the dispute over whether Cottini had acted properly as an agent and was entitled to the agent's fees he requested. It is entirely coincidental that Cottini's request arose within the context of a guardianship proceeding, and we conclude that AS 13.26.291 does not provide the applicable rule of decision in this dispute.

---

[16] *Id.* at 577.

[17] AS 13.26.291(d) ("The court may require the petitioner to pay all or some of the costs described in (a) and (b) of this section if the court finds that the petitioner initiated a proceeding under this chapter that was malicious, frivolous, or without just cause.").

**B.      Alaska Statute 13.26.665(m) Does Not Apply To This Dispute But Is Not Inconsistent With Awarding Cottini Attorney's Fees**.

Alaska Statute 13.26.665 provides rules of construction for the statutory power of attorney form set out in AS 13.26.645.  Berggren used the statutory form.  Alaska Statute 13.26.665(m) provides in relevant part:

> In a statutory form power of attorney, the language conferring general authority with respect to records, reports, and statements shall be construed to mean that, with respect to a record, report, or statement concerning the affairs of the principal, . . . the principal authorizes the agent to
>
> (1)      keep records of cash received and disbursed for or on account of the principal, of all credits and debits to the account of the principal, and of all transactions affecting the assets and liabilities of the principal;
>
> . . . .
>
> (4)      hire, discharge, or compensate an attorney, accountant, or assistant when the agent reasonably believes the action to be desirable for the proper execution of the powers described in this subsection; and
>
> (5)      do any other act or acts that the principal can do through an agent in connection with the preparation, execution, filing, storage, or other use of any records, reports, or statements of or concerning the principal's affairs.

Cottini asserts on appeal that just as AS 13.26.291 removed the fee-shifting dispute in the guardianship case at issue in *In re Vernon H.* from the scope of Rule 82, AS 13.26.665(m) does the same in this case.  This is so, he argues, because AS 13.26.665(m)(4) "expressly governs the ability of an agent to retain an attorney to assist him regarding reports concerning the affairs of the principal" and because Rule 82 applies only when an alternate fee-shifting framework is not "otherwise provided by

law." Accordingly, he argues that we should hold that AS 13.26.665 displaces Rule 82 when an agent seeks to recover attorney's fees from his principal.

More specifically, Cottini argues that subsection (m)(1) authorized him to prepare an accounting of his handling of Berggren's affairs and subsection (m)(4) explicitly authorized Cottini to retain and compensate an attorney using Berggren's funds when he reasonably believed this was desirable for the proper execution of his power as Berggren's agent to prepare and submit an accurate accounting. Berggren appears to agree, conceding that Shaftel was entitled to compensation from Berggren for preparing the accounting. But Cottini argues further that under AS 13.26.665(m)(4) and (5), he is also entitled to be reimbursed for retaining Vallentine to assist him in defending the accounting.

Berggren responds that AS 13.26.665(m) does not entitle Cottini to attorney's fees incurred in defending the accounting because only Shaftel, as the attorney who prepared the accounting, was hired pursuant to Cottini's authority as an agent under the power of attorney and AS 13.26.665(m)(1) and (4). Therefore, Berggren argues, although Cottini would be entitled to reimbursement for Shaftel's fees, he would not be entitled to reimbursement for Vallentine's.

The statute does not help resolve this issue, for several reasons. First, the dispute hinges on whether retaining Vallentine to assist with responding to Berggren's objections to Cottini's accounting was within the scope of Cottini's powers as Berggren's agent. Cottini certainly had the power to "keep records of cash received and disbursed for or on account of the principal, of all credits and debits to the account of the principal, and of all transactions affecting the assets and liabilities of the principal," as well as to "hire [and] compensate an attorney . . . when [he] reasonably believe[d] the

action to be desirable for the proper execution of [this power]."[18]   But the proper preparation of an agent's accounting is distinct from the defense of that accounting when challenged by the principal, and the latter does not clearly fall within the scope of the statute.

Second, even assuming that retaining Vallentine was within the scope of Cottini's authority as agent, AS 13.26.665 contains no provisions actually relating to fee-shifting or reimbursement.  The statute instructs courts on how to construe the powers of an agent outlined in the statutory form power of attorney.[19]  Where the statutory form is used to appoint an agent, the statute ensures that the agent has the authority to hire and compensate an attorney on the principal's behalf while acting as agent.[20]  But the statute contains no provisions obliging the principal to reimburse a former agent even for indisputably appropriate expenditures.[21]  That is not to say that the principal has no such obligation, just that one does not arise from AS 13.26.665.

Therefore, while the text of AS 13.26.665 says nothing to suggest Cottini is not entitled to reimbursement for attorney's fees incurred in the successful defense of

---

[18]     AS 13.26.665(m)(1), (4).

[19]     Every subsection of AS 13.26.665 begins with the language "In a statutory form power of attorney, the language conferring general authority with respect to . . . [a specific topic] . . . shall be construed to mean that . . . the principal authorizes the agent to . . . ," followed by a list of more specific powers falling within the topic addressed.

[20]     AS 13.26.665(m)(4).

[21]     A number of provisions in the statute allow agents to reimburse themselves "for an expenditure properly made in the execution of the [agent's] powers."  *E.g.*, AS 13.26.665(a)(6), (b)(5), (c)(7).  But none of these provisions relate to a principal reimbursing a former agent for such expenditures after the end of the agency relationship.

his accounting, these fees do not clearly fall within its scope, and the statute by itself does not require that Berggren reimburse Cottini for them.

**C.**      **Under The Common Law Of Agency, An Agent Is Entitled To Reasonable Attorney's Fees Incurred In Successfully Defending His Accounting If That Defense Benefited The Principal.**

A power of attorney, such as the statutory form Berggren executed, is a legal instrument granting authority to an agent to act on behalf of the principal who executed it.[22] Berggren's power of attorney established a fiduciary principal–agent relationship between Berggren and Cottini and created duties between them. This relationship is subject to both legislative enactments, like AS 13.26.665, and the common law of agency as interpreted and promulgated by this court. And in a common law agency relationship, unless the parties agree otherwise, the principal has a duty to indemnify the agent for expenditures that were beneficial to the principal.[23] Under this rule, the relevant question is whether the attorney's fees Cottini seeks to collect were incurred for services that benefited Berggren.

Berggren argues that after the superior court terminated the agency relationship, Cottini and Berggren were adverse parties, and that because Vallentine represented Cottini individually, the services Vallentine provided benefited Cottini, not Berggren. In short, Berggren contends that there is a "principled difference" between

---

[22] *Power of Attorney*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[23] RESTATEMENT (THIRD) OF AGENCY § 8.14 (AM. LAW INST. 2006) ("A principal has a duty to indemnify an agent (1) in accordance with the terms of any contract between them; and (2) unless otherwise agreed, (a) when the agent makes a payment (i) within the scope of the agent's actual authority, or (ii) that is beneficial to the principal, unless the agent acts officiously in making the payment; or (b) when the agent suffers a loss that fairly should be borne by the principal in light of their relationship.").

Cottini's "unquestioned right to pay Shaftel to assist in agency affairs" and Cottini's "individual defense" through Vallentine against Berggren's objections. Berggren points to several out-of-state cases, largely from the estate administration context, that he argues give dispositive weight to the distinction between an attorney representing an agent individually and one representing the agent in a fiduciary capacity, with reimbursement for attorney's fees being required only for the latter. But in each of these cases, the dispositive question the court addressed was whether the services in question were actually rendered for the benefit of the estate.[24]

And either way, the distinction in this case between Vallentine's and Shaftel's services was largely cosmetic. Although Vallentine and Shaftel repeatedly identified themselves to the superior court as respectively representing Cottini individually and in his capacity as agent, the two attorneys consistently cosigned filings and worked together. At one point, Shaftel even filed a notice of non-participation in a scheduled hearing in which he informed the court that he had conferred with Vallentine and that she would convey to the court Cottini's position in his capacity as Berggren's former agent. Thus, despite their representations, it is clear that Vallentine's representation covered Cottini both individually and in his capacity as agent. We are not

---

[24]    *See, e.g.*, *In re Estate of Raphael*, 274 P.2d 880, 883-84 (Cal. App. 1954) (denying attorney's fees for legal services where the court found "no theory upon which the estate could be benefitted by the administrator's action" but allowing attorney's fees for defending against challenges to the administrator's accounting); *In re Estate of Painter*, 671 P.2d 1331, 1334 (Colo. App. 1983) ("[F]ees collectable under [the relevant statute] must necessarily be related to services rendered to benefit the estate."); *Estate of Breeden v. Gelfond,* 87 P.3d 167, 170-71 (Colo. App. 2003) (applying *Painter*'s "benefit rule" to conclude that an estate representative who was sued for work he performed in that capacity, and whose work benefited the estate, was "entitled to necessary expenses, disbursements, and reasonable attorney fees incurred in defending this action").

convinced that resolution of the question whether Vallentine's services benefited Berggren should depend on how Vallentine nominally characterized her representation of Cottini. Rather, the correct analysis is whether the representation actually afforded some benefit to Berggren.

To answer that question, Cottini directs us to several cases from the trustee context. He argues that those cases indicate by analogy that as an agent — who like a trustee is a fiduciary — he should be entitled to attorney's fees from his principal when those fees were incurred in defending his work as an agent. For example, in *Saulsbury v. Denton National Bank*, a Maryland case, the life tenants of a trust petitioned the court to remove the trustee and surcharge him for alleged malfeasance, but they later moved to dismiss their claims without prejudice when one of them fell ill.[25] The court awarded attorney's fees to the trustee, to be charged against the trust's assets.[26] The petitioners argued on appeal that "where the defendant-trustee is not directly preserving the assets of the trust but is rather fighting a legal battle to preserve his own status as trustee, he is acting not on behalf of the trust but on behalf of himself."[27] The Maryland Court of Special Appeals acknowledged "a certain surface logic in the proposition" but held that "a successful defense by a trustee against an effort to remove him as trustee is a defense on behalf of the trust estate itself."[28] The court quoted from a treatise to explain its rationale:

> [T]rustees have no beneficial interest in the trust property. They hold it for the accommodation and benefit of others. If

---

[25] 335 A.2d 199, 199-200 (Md. Spec. App. 1975).

[26] *Id.* at 200.

[27] *Id.* at 201.

[28] *Id.*

they perform their duties faithfully, and are guilty of no unjust, improper, or oppressive conduct, they ought not in justice and good conscience to be put to any expense out of their own moneys. If, therefore, they are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client.[29]

The court also noted opinions on the subject from Judge Benjamin Cardozo[30] and Judge Learned Hand,[31] both supporting the proposition that a trustee is entitled to reimbursement from the trust for attorney's fees incurred in successfully defending against surcharge and removal.

Similarly, in *Hollaway v. Edwards*, a California case, a trust beneficiary petitioned for removal of the trustee and alleged breach of fiduciary duties.[32] The court found no wrongdoing and denied the petition, allowing the trustee to recover attorney's fees from the trust.[33] The California Court of Appeal affirmed and explicitly rejected the

---

[29]    *Id.* (quoting 2 JAIRUS WARE PERRY, A TREATISE ON THE LAW OF TRUSTS AND TRUSTEES § 894 (7th ed. 1929)).

[30]    *Id.* at 201-02 ("The question remains whether the services were beneficial in the preservation of the trust. We have no doubt that they were. . . . [The trustee] owed a duty to the estate to stand his ground against unjust attack. He resisted an attempt to wrest the administration of the trust from one selected by the testator and to place it in strange hands." (quoting *Jessup v. Smith*, 119 N.E. 403, 404 (N.Y. 1918) (Cardozo, J.))).

[31]    *Id.* at 202 ("To compel [the trustee] to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement to his acceptance of the burden of his duties. This has been uniformly the ruling, so far as we have found." (quoting *Weidlich v. Comley*, 267 F.2d 133, 134 (2d Cir. 1959) (Learned Hand, J.))).

[32]    80 Cal. Rptr. 2d 166, 168 (Cal. App. 1998).

[33]    *Id.*

argument that the trustee should not be entitled to attorney's fees because they were incurred to serve her own interests.[34] The appellate court reasoned that "[w]hile defense against those allegations may have benefited [the trustee] personally by eliminating the possibility of individual liability, [it] also benefited the trust by eliminating charges raising serious questions about whether she had and could continue to administer the trust properly."[35]

Berggren raises a number of arguments against following the examples of these cases. First, Berggren contends that we considered and rejected this line of reasoning in the trustee context in *Marshall v. First National Bank Alaska*.[36] But in that case, we only refused to hold as a matter of law that the trustee was entitled to attorney's fees for defending his actions; we recognized that a trustee may be entitled to attorney's fees on a case-by-case basis,[37] an approach we discuss in further detail below.

Second, Berggren contends that we rejected this "benefit theory" in *Enders v. Parker*.[38] We did not. In that case we considered AS 13.16.435, which governs recovery of expenses incurred in estate litigation.[39] We concluded that, based on the statute's plain language,[40] it does not impose a requirement that such litigation benefit

---

[34]     *Id.* at 170.

[35]     *Id.*

[36]     97 P.3d 830 (Alaska 2004).

[37]     *See id.* at 842-43.

[38]     66 P.3d 11 (Alaska 2003).

[39]     *Id.* at 14-15.

[40]     AS 13.16.435 provides in full: "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith,
(continued...)

the estate; rather, the statute allows the personal representative of an estate to recover attorney's fees for any proceeding or defense brought in good faith on behalf of the estate. No equivalent statute applies to the case now before us, and common law agency principles do look to whether an agent's actions benefit the principal.

Third, Berggren also argues that some of the cases Cottini relies on are distinguishable as based on statutes that explicitly provide for shifting of attorney's fees. But this does not undermine their relevance. The policies animating similar statutes and the principles courts rely on to interpret those statutes are relevant to deciding the issue before us.

Fourth, Berggren argues that we should disregard cases based on successful defenses, asserting that Cottini did not successfully defend his actions because he settled the claims challenging his accounting and actions as agent. This argument is unpersuasive given that all of Berggren's objections to Cottini's accounting were withdrawn, Berggren's counterclaims were dismissed with prejudice, and Berggren ultimately agreed to pay almost all of the agency fees and expenditures Cottini requested. Although it is theoretically possible that a trial might have revealed that Cottini acted improperly as Berggren's agent or that Cottini's accounting was inaccurate, Berggren chose to settle. He cannot now argue that Cottini has not successfully defended his accounting.[41]

---

[40] (...continued)
whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred."

[41] *Cf. Saulsbury v. Denton Nat'l Bank*, 335 A.2d 199, 203 (Md. Spec. App. 1975) ("[Appellants'] effort to shift the burden to the defendant-trustee to establish that its defense would have been bona fide had the issue reached a trial upon the merits, after they themselves aborted the trial, is an intolerable instance of wishing 'to have their cake
(continued...)

Fifth, Berggren asserts that *Saulsbury* held "that if a trustee is removed he must pay his own expenses," suggesting without further argument that because Cottini's role as agent was terminated prior to the dispute over the accounting, Cottini is responsible for his own attorney's fees. *Saulsbury* did cite a treatise stating that "if [a trustee] is removed he must pay his own expenses," but that passage refers to an unsuccessful defense against a removal action,[42] not broadly to any circumstance where the litigant no longer serves in a fiduciary capacity, as Berggren seems to suggest.

And sixth, Berggren argues that these cases are distinguishable as fiduciary removal cases. But those removals were frequently initiated because of some alleged malfeasance, much like the malfeasance Berggren alleged.[43] In any event, they involved defending a fiduciary's role like the defense at issue here, and the cases are persuasive by analogy.

A recent treatise indicates that the rule reflected in *Saulsbury* and *Hollaway* has persevered: trustees are generally entitled to recoup attorney's fees incurred in successfully defending their actions as trustees because the defense benefits the trust.[44]

---

[41] (...continued) and eat it too.' ").

[42] *See id.* at 201 (quoting GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 809 (2d ed. 1960)).

[43] *See Hollaway v. Edwards*, 80 Cal. Rptr. 2d 166, 168 (Cal. App. 1998) ("[Co-trustee and beneficiary] petitioned . . . for [respondent's] removal as cotrustee, alleging she breached her fiduciary duties . . . ."); *Saulsbury*, 335 A.2d at 199-200.

[44] ALAN NEWMAN ET AL., THE LAW OF TRUSTS AND TRUSTEES § 971 (online ed. 2017) ("Reasonable attorney's fees incurred by the trustee in anticipation of, or in defending, a claim brought against it by a beneficiary for removal or surcharge alleging breach of duty generally will be allowed from the trust if the trustee's defense is successful, but usually will not be allowed if the beneficiary's claim succeeds." (footnote (continued...)

Several jurisdictions also apply a similar rule in the estate administration context.[45] By analogy, an agent, who is also a fiduciary, should also be entitled to attorney's fees incurred in successfully defending his work as an agent against a challenge by his principal because his defense benefits the principal.

We recognize that in some ways an agent's relationship to the principal differs from the relationship between trustee and beneficiary. For example, a trustee is not appointed by the beneficiary but by the trustor. Consequently, a trustee's defense against a beneficiary's attempts to remove him or sue him for malfeasance is easier to characterize as benefiting the trust itself because it is done in the service of ensuring that the trustor's intent is effectuated.[46] With a statutory agent, there is no third party or entity on behalf of which the agent can be said to be resisting; there is only the principal. Notwithstanding this difference, Cottini's analogy to the trust context remains persuasive. As in *Hollaway*, Cottini's defense against Berggren's allegations and objections "may have benefited [Cottini] personally by eliminating the possibility of individual liability," but it also benefited Berggren by "eliminating charges raising

---

[44] (...continued) omitted)).

[45]     *See, e.g.*, *In re Estate of Beach*, 542 P.2d 994, 1008 (Cal. 1975) ("[E]xpenditures for an executor's or administrator's successful defense against exceptions to his account are chargeable against the estate."); *In re Estate of Browarsky*, 263 A.2d 365, 366 (Pa. 1970) ("[I]t would be unjust to require [estate executors] personally to bear the reasonable costs of the defense of suits brought against them solely by reason of their positions as executors. 'It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack.' " (quoting *In re Wormley's Estate*, 59 A.2d 98, 100 (Pa. 1948))).

[46]     *See Saulsbury,* 335 A.2d at 201-02.

serious questions" about whether Cottini had properly fulfilled his duties as an agent.[47] As Cottini argues, "[a]n accurate accounting of both the expenditures and the agent's time and a determination that the agent fulfilled his fiduciary duties serve the interests of the principal, even if the defense in the end also benefits the agent."[48]

We conclude that where a former agent retains an attorney and successfully defends the agent's accounting, the agent may be entitled to reimbursement from the principal because the defense and the attorney's representation also benefited the principal. The fact that the attorney may have nominally represented the agent individually, or that the agent may have received some individual benefit from the attorney's services, does not preclude such reimbursement. Again, a principal has a duty to indemnify his agent for payments that benefit him.[49]

Both Cottini and Berggren advance public policy arguments in support of their respective positions. Having considered these arguments, we conclude that the rule outlined above also serves the interests of public policy. Attorney representation enhances the adversarial process and assists the court in discerning both the truth of a matter and how the law might apply to it. Holding agents personally responsible for the cost of successfully defending their accounting could discourage agents from obtaining the advice of counsel, or even discourage agents from maintaining a good-faith defense

---

[47] *See Hollaway*, 80 Cal. Rptr. 2d at 170.

[48] Alaska law already recognizes that conduct that benefits the individual agent can also benefit the principal. For example, AS 13.26.327(d) provides that "[a]n agent [who] acts with care, competence, and diligence for the best interest of the principal is not liable [for breach of duty] solely because the agent also benefits from the act or has an individual or conflicting interest in relation to the property or affairs of the principal."

[49] RESTATEMENT (THIRD) OF AGENCY § 8.14(2)(a)(ii) (AM. LAW INST. 2006).

of legitimate actions, expenditures, and fees.[50] We acknowledge that making the principal pay the cost of an agent's successful defense may similarly discourage a principal from challenging an agent's accounting. But between these two options, we believe it is more fair to place the cost on the principal as the party choosing to initiate adversary proceedings.[51] Furthermore, because the rule we outline here would require a principal to pay only the cost of legal services that actually benefit the principal, we are not persuaded by Berggren's suggestion that this limited indemnification would foreclose judicial oversight over unscrupulous agents.

Cottini also argues that a number of equitable factors support his claim. He asserts that he did not ask to be appointed as Berggren's agent but accepted the surprise appointment after Berggren's injury, even though it was a substantial time commitment. Cottini contends that after submitting a detailed accounting he hoped to be done with the matter, but that Berggren's unreasonable objections and counterclaims led him to retain an attorney to defend his accounting. When Berggren withdrew the counterclaims and objections, Cottini observes that everyone was left in the same position as if Berggren had never opposed the accounting. Cottini argues he should not now be left to foot the bill for fees he incurred only because of his appointment as Berggren's agent.

---

[50] Contrary to Berggren's suggestion, we did not reject this policy argument in *Marshall v. First National Bank Alaska,* 97 P.3d 830 (Alaska 2004). In that case, the superior court's probate master expressed this possible chilling effect as one of several grounds for denying a surcharge petition against a trustee. *Id.* at 838. Our decision vacated that denial, but we did not reject the substance of the policy arguments. Rather, we merely directed the superior court to a contrary applicable statutory standard and remanded for further proceedings. *Id.* at 838-39, 843.

[51] *Cf. Saulsbury,* 335 A.2d at 201 ("If [trustees] are brought before the court without blame on their part, they should be reimbursed all the expenses that they incur, and allowed their costs as between solicitor and client." (quoting PERRY, *supra* note 31, at § 894)).

An agent has a statutory duty to "keep a record of all receipts, disbursements, and transactions made on behalf of the principal" and to produce that accounting on request of the principal or the court.[52] From this obligation, it is a short step to reason that, as a consequence of accepting the appointment, the agent would need to defend that accounting if challenged. Broadly speaking, we find compelling Cottini's argument that it would be unfair to force an agent to personally fund the successful defense of actions that were taken in good faith and only because of having accepted the appointment as agent.

On the other hand, there are factors in tension with Cottini's narrative. Cottini was not acting merely as a friend, but sought compensation at a rate of $50 per hour for his services as agent. Cottini also initially resisted the termination of his agency. One of Berggren's physicians opined that Cottini was not "using appropriate substituted judgment consistent with Mr. Berggren's values or wishes," and described the situation as "completely adversarial." In addition, although Cottini claims that Berggren unreasonably prolonged litigation, Berggren asserts that Cottini failed to communicate with Berggren and that the dispute "could have been resolved privately between two 'friends.'"

The court did not consider these factual issues because it denied Cottini's attorney's fees under AS 13.26.291(d) as a matter of law. These considerations may be relevant to the court's inquiry under the approach we outline in the next section, but we highlight here the more general point that agents who are "brought before the court without blame on their part,"[53] who are forced to defend their accounting by virtue of

---

[52] AS 13.26.610(b)(4), (h).

[53] *Saulsbury,* 335 A.2d at 201 (quoting PERRY, *supra* note 31, at § 894).

accepting the appointment as agent, and who succeed in that defense, should not therefore be obligated to fund their litigation costs out of pocket.

**D.**  **On Remand, The Superior Court Must Determine Whether Cottini Is Entitled To Attorney's Fees Through An Approach Modeled On** ***Marshall v. First National Bank Alaska.***

Both parties spend a considerable portion of their briefing discussing how our decision in *Marshall v. First National Bank Alaska* supports their respective positions. That case addressed attorney's fees related to the substitution of a trustee, not a challenge to an agent's performance and accounting. Its holding therefore does not directly govern this case, but it nonetheless provides valuable guidance for resolving the issue at hand. In *Marshall*, the beneficiary of a trust successfully petitioned to have the trustee substituted.[54] The trustee incurred attorney's fees in litigating the dispute and charged them to the trust; the beneficiary, in a surcharge petition, asked the court to order the trustee to repay the trust.[55] The superior court denied the request, reasoning that the trustee had not acted in bad faith, that no statute authorized such a request, and that forcing the trustee to repay the trust would have a chilling effect on future trustees who might disagree with a trust beneficiary.[56]

We explained that because there was a statute that authorized a surcharge petition if the trustee's fees were excessive or unreasonable it was legal error to deny the petition for the reasons discussed by the superior court.[57] We then explained that compensation could be unreasonable either because the fees themselves were

---

[54]  *Marshall*, 97 P.3d at 833-34.

[55]  *Id.* at 834.

[56]  *Id.*

[57]  *Id.* at 838; *see* AS 13.36.055.

unreasonable or because the services for which the fees were charged were unreasonable.[58]  To inform this analysis, we looked to the trust document, applicable statutes, and common law principles.

The trust document authorized the trustee to employ attorneys and pay them reasonable compensation, as well as to join in or defend litigation.[59]  But, noting that "[a] trustee is a fiduciary of the highest order,"[60] we expressed doubt as to whether the trustee's prolonged opposition to the beneficiary's request to change trustees was consistent with the statutes or the trust document.[61]  We ultimately refused to rule as a matter of law whether the trustee had to repay the disputed fees.[62]  Instead, we remanded to the superior court to determine whether the trustee was entitled to attorney's fees in light of several factors, including:

> the total amount of the fees, the size of the trust relative to the amount of the fees, the merits of the parties' arguments on the substitution dispute, the extent to which the opposition [was] based on the beneficiary's best interests in accordance with the trust document and the Alaska Statutes, and the duration, extent, and expense of the trustee's opposition.[63]

Cottini argues we should consider *Marshall* persuasive authority establishing the right of an agent to recover attorney's fees incurred in successfully defending the agent's own role.  Berggren urges us to reject Cottini's claim for fees

---

[58]     *Marshall*, 97 P.3d at 839.

[59]     *Id.* at 840.

[60]     *Id.* at 839.

[61]     *Id.* at 841-42.

[62]     *Id.* at 842-43.

[63]     *Id.* at 842-43.

because, he asserts, we rejected a similar claim by the fiduciary in *Marshall*. He emphasizes that in *Marshall* we concluded that a trustee's good faith opposition to substitution does not foreclose forcing the fiduciary to pay attorney's fees spent in defending against substitution. Both parties ask too much of *Marshall.* While our opinion in *Marshall* is persuasive, it does not establish as a matter of law a trustee's right to recover attorney's fees incurred in defending an attempt to replace him, only that he may recover such fees if they are determined to be reasonable. And while we did not grant the trustee's claim regarding fees in *Marshall*, we also did not reject it, but remanded for further consideration in light of the factors we identified as potentially relevant.

We believe a similar approach in this analogous context is appropriate, given the similarity of the relevant common law principles and fiduciary duties. Consequently, we remand for the superior court to determine whether Cottini is entitled to attorney's fees incurred in successfully defending his accounting of his actions, expenditures, and fees in light of the factors we discuss here. The superior court should consider the statutory form power of attorney, other relevant documents, the common law of agency, and factors such as the total amount of the attorney's fees, the amount of the assets managed relative to the amount of the attorney's fees, the merits of the parties' arguments in the underlying dispute, the extent to which the defense was based on the best interests of the principal in accordance with the power of attorney document and relevant Alaska Statutes, as well as the duration, extent, and expense of the agent's defense.[64]

---

[64] *See id.*

On the facts in *Marshall*, we refused to rule as a matter of law that the trustee was entitled to attorney's fees.[65] We observed that some of the trustee's opposition to the substitution was likely illegitimate, failed to give proper weight to the beneficiary's wishes, and was based on irrelevant factors.[66] In addition, the trustee fought substitution in prolonged litigation that was ultimately unsuccessful.[67] In contrast, Cottini litigated to ensure that he was paid for his time and costs already expended on behalf of his principal in response to Berggren's objections. Virtually all objections to his accounting were withdrawn. Berggren's counterclaims were dismissed with prejudice, and Berggren ultimately agreed to pay most of the fees and expenditures Cottini requested. The attorney's fees were relatively small in comparison to the assets Cottini was managing. And basic agency law requires that "when the agent makes a payment . . . that is beneficial to the principal . . . or . . . suffers a loss that fairly should be borne by the principal in light of their relationship" the agent must be indemnified.[68]

Because the superior court is more familiar with the dispute at hand, including equitable factors such as those discussed above, and because it did not consider these factors in its decision denying Cottini's fee request, we remand so the court can consider and apply the factors we have identified, as well as other factors the parties or the court may identify on remand. We emphasize that although the requested attorney's fees were more than double the agent's fees Cottini charged, the ratio between the

---

[65] *See id.* at 842.

[66] *Id.* ("The probate master's report recommending substitution implicitly recognizes the frailty of [the trustee's] opposition.").

[67] *Id.* at 841 ("We leave it to the court on remand to consider whether prolonged opposition to a request to change trustees was consistent with the statutes or the trust document.").

[68] RESTATEMENT (THIRD) OF AGENCY § 8.14(2) (AM. LAW INST. 2006).

amount of Cottini's agent's fees and the amount of the attorney's fees incurred to defend them is not among the factors to be considered in determining whether Cottini is entitled to reasonable attorney's fees, considering that Cottini was also defending against allegations of breach of fiduciary duty and mismanagement of a multi-million dollar estate.[69]

Finally, we hold that where an agent successfully defends against a challenge from his principal and is entitled to reimbursement for the attorney's fees incurred, the agent is not also entitled to an award of attorney's fees under Alaska Civil Rule 82. This is because the framework we have outlined here constitutes a fee-shifting framework that is "otherwise provided by law," thus displacing Rule 82 in this context. We are not presented with the question whether a principal who successfully challenges the agent's accounting might be eligible for a Rule 82 award, and so we do not address it.

## V. CONCLUSION

We REVERSE the court's decision denying Cottini's motion for attorney's fees and REMAND for further proceedings consistent with this opinion.

---

[69] *See In re Estate of Johnson*, 119 P.3d 425, 434 (Alaska 2005) ("[A]nother factor that a trial court may consider when determining the reasonableness of fees in the estate context is the size of the estate.").